ABRAHAM HEWLETT et al., Appellants, *v.* WILLIAM ELMER, Respondent.

An appeal to this court from a judgment of General Term, affirming a decree of the surrogate admitting a will to probate, does not bring up for review a question of fact depending upon conflicting evidence; it is for it only to determine whether there is any evidence upon which the decision below might fairly and reasonably stand.

The power of the court in this respect was not enlarged by the amendment of 1883 (Chap. 229, Laws of 1883), to the provision of the Code of Civil Procedure (subd. 1, § 3347), limiting the effect of certain chapters of the Code, including that in reference to surrogates (Chap. 18), to actions or special proceedings commenced on or after September 1, 1880. The amendment only regulates such appeals as by existing laws were permitted.

By the Code (§ 2545), the practice upon a trial by a Surrogate s Court of a question of fact, and the preparation of papers on which an appeal shall be heard, are assimilated to the proceedings on and after trial of an action by the court, and for this purpose the surrogate s decree is regarded as a judgment in an action.

The provisions of the Code in reference to this subject are applicable to the Court of Appeals as well as to the Supreme Court, and those provisions defining and limiting the questions which may be brought up for review by the former court (§§ 1337, 1338), are applicable to an appeal from the determination of the General Term, on appeal to it from a surrogate s decree, upon the trial by him of an issue of fact.

(Argued June 9, 1886; decided October 5, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 11, 1883, affirming certain decrees of the surrogate of the county of New York, the substance of which, as well as the material facts, are set forth in the opinion.

*Henry L. Clinton* for appellants.    As the proceedings in this case were commenced before the surrogate of the county of New York in the year 1878, this court will consider and determine upon the facts as well as the law.    (Laws of 1881, chap. 681, and Laws of 1883, chap. 229, amending subd. 11 of § 3347 of tit. 2 of chap. 22 of the Code of Civ. Pro.; *Sarvent* v. *Hesdra*, 26 Hun, 550.)    In appeals from decisions of the Supreme Court affirming decrees of a surrogate, the Court of Appeals should review the facts as well as questions of law.    (Laws of 1876, chap. 448, § 1496; *Schenck* v. *Dart*, 22 N. Y. 420; *Caujolle* v. *Ferrie*, 23 id. 90; *Moore* v. *Moore*, 21 How. Pr. 211; *Robinson* v. *Raynor*, 28 N. Y. 494; *Howland* v. *Taylor*, 52 id. 627; *Rollwagen* v. *Rollwagen*, 63 id. 504; *Children's Aid Society* v. *Loveridge*, 70 id. 387, 409; *In re Ross*, 87 id. 514; *Davis* v. *Clark*, id. 623; *Marx* v. *McGlynn*, 88 id. 357; *In re Will of Higgins*, 94 id. 554, 557; *In re Will of Cottrell*, 95 id. 329, 332; *In re Yates*, 99 id. 99, 101; *In re Valentine*, 100 id. 607.)

*E. L. Fancher* for respondent.    The General Term having

affirmed the decision of the surrogate on the facts, there is no jurisdiction in the Court of Appeals to review those decisions on conflicting evidence. (Code of Civ. Pro., § 1337; *In re Ross*, 87 N. Y. 514; *Davis* v. *Clark*, id. 623; *Marx* v. *McGlynn*, 88 id. 357.) As there was sufficient evidence to authorize the decision of the surrogate, which was affirmed by the Supreme Court, it follows that this court should affirm the judgment. (*Marx* v. *McGlynn*, 88 N. Y. 369.) Even if the testimony presented a question of fact, upon which different minds might easily disagree, still this court must affirm the judgments of the surrogate and Supreme Court. (*In re Will of Darrow*, 95 N. Y. 668.)

DANFORTH, J. Samuel Wood made his will in July, 1872. He was possessed of a large estate, and after giving considerable sums of money to his relations, provided through trustees for the founding and endowment of an institution to be called "The Samuel Wood Benevolent Institute," and a hospital similar to the institution known as St. Luke's Hospital in New York, at the same time declaring the purpose and object of the institute to be "to assist and maintain" such of his relations and kindred, with certain exceptions, as shall in the opinion and judgment of his trustees need assistance, and gave to those relations a right to free beds, bedding, attendance, support and maintenance in the hospital during life, if they shall so long need assistance, and a decent burial after death." On the 20th of March, 1875, he executed a codicil in due form, by which he removed the hospital and the institute from the roll of his beneficiaries, and named in their place "The Samuel Wood College of Music," which he desired to found. He dropped one S. from the executors' list, and substituted Elmer, the respondent, and Abraham Hewlett in his place. The testator died on the 20th of March, 1878. On the twenty-sixth of that month, Hewlett presented the will and codicil to the surrogate of New York for probate, stating in his petition that he was a nephew and the only heir and next of kin of the deceased. No opposition was made to the will, and it was admitted to

probate on the 20th of April, 1878. The executor S., above referred to, opposed probate of the codicil, but afterward withdrew from the contest, and that instrument was also admitted to probate on the 10th of October, 1878. On the fourteenth of that month Pearsall, one of the legatees under the will, claiming that he was co-contestant with S., and that the latter's withdrawal from opposition without notice to him, rendered the decree irregular, and insisting that the codicil was invalid on the grounds, *first*, that the testator was of unsound mind and incompetent to make the same, *second*, that he was unduly and improperly influenced thereto by Elmer, one of the executors and other interested parties to him unknown, applied to have the probate of the codicil vacated and to be heard upon his objections. Thereupon the surrogate made an order that he be allowed to contest the probate of the codicil, and with certain other persons proceed in regard thereto, and give such further or additional evidence in regard to it as they might be advised, and the question of vacating the probate of said codicil be reserved until the close of said evidence and the determination of such contest; and that subject to the right so given the said decree admitting the said codicil to probate, and the letters testamentary issued thereon, should stand, with powers to the executors of the will to administer the estate under the will, so far as the same has not been modified by the said codicil.

Upon such testimony as the parties produced, it appeared to the surrogate, according to the recital in a decree made December 31, 1881, that the said Samuel Wood at the time he executed the codicil was of sound mind and under no restraint or influence of fraud, and he adjudged that the decree of October, 1878, admitting the same with the will to probate as the will and codicil of the deceased, be ratified and confirmed. The motion, therefore, to open the decree of October was denied, and the letters issued thereon to Elmer were ratified and declared valid. It was further adjudged that the motion by counsel for the proponent, William Elmer, for allowance to his proctor and counsel be granted. And the amount thereof,

as well as allowances to the proctor and counsel for said contestant, Pearsall, be adjusted by an order to be entered at the foot of the decree.

The notice and petition of appeal recites that the only person intended to be made respondent is William Elmer. The appeal is from the whole of both decrees of the surrogate, viz.: that of October, 1878, and that of December, 1881, except so much as relates to the probate of the will. The General Term affirmed the decree in all respects. We do not find in the record that the appellants made any contest before the surrogate, and as it is conceded by all that the will is valid and must stand, it is exceedingly difficult, in view of the provisions of that instrument, to find in what manner they are, within the meaning of that term, "aggrieved" by the probate of the codicil. They might, indeed, share in the privileges of the institute and hospital, provided the trustees were of opinion they needed assistance, but an interest so contingent, and an enjoyment so dependent upon the discretion of another, can hardly constitute a right capable of enforcement in a court. Moreover, the record before us shows that as to them, the decision of October was final. It would seem, therefore, that the appeal might very well have been dismissed by the Supreme Court, upon these grounds, which are also set up in the answer to the petition of appeal. The whole case, however, was considered by that court, and the appellants fail to satisfy us that there is any error in its decision.

In one of the printed briefs submitted to us in their behalf, we find a point made against that part of the decree of December, which provides for costs to be paid the proponent Elmer, and costs to be paid the contestant Pearsall. *First.* As to Pearsall; he is not a party to the appeal, and the question affecting him cannot be considered. *Second.* As to Elmer; it does not appear what, if any, allowance has in fact been made to him, and the proceeding in that respect, so far as the learned counsel for the appellant has directed our attention to it, seems incomplete, and in its present condition is not the subject of review.

The remaining propositions in the same brief present a very material question, and if well founded, they show that upon the merits the surrogate and General Term have in some inexplicable way been misled. These propositions are more than once repeated, and are placed upon the intelligible and plain assertions that by the undisputed evidence it is shown *first* " that prior to the execution of the codicil, the decedent was in such a condition of mental enfeeblement or senile decay as to render him an easy prey to undue influence; *second*, that taking advantage of decedent's mental condition, Dr. Elmer practiced upon him the grossest fraud and the rankest kind of undue influence, for the purpose of inducing him to make the codicil in question; *third*, that the execution of the codicil was the result of fraud and undue influence practiced upon him by Dr. Elmer; *fourth*, that decedent continued in a state of mental enfeeblement or senile decay, from the time of the execution of the codicil until his death."

Upon this statement a question of law is presented. If there is evidence leading to a different conclusion, it at most presents a case of conflict, and this alone, if our former decisions (*infra*) are correct, would not permit an interference with the judgment of the Supreme Court. In such a case the duty of weighing and comparing, and of drawing inferences from evidence is imposed upon the surrogate, subject to review by the General Term, whose judgment, as we have frequently held, is quite independent of any view we might take of the same matter. (*Davis* v. *Clark* [Nov., 1881], 87 N. Y. 623; *In re Ross* [Jany., 1882], 87 id. 514; *Marx* v. *McGlynn* [March, 1882], 88 id. 357; *In re Higgins*, 94 id. 554; *In re Cottrell*, 95 id. 329; *In re Darrow*, id. 668; *In re Yates*, 99 id. 94; *In re Valentine*, 100 id. 607.) These cases are placed upon the ground that an appeal to this court does not bring up for review a question of fact depending upon conflicting evidence, that such question remained with the court below, it being for us only to determine whether there is any evidence upon which its decision might fairly and reasonably stand. A second or supplemental brief, however, submitted in behalf of the ap-

pellants, deals entirely with the exposition of the duty and jurisdiction of this court, and is to the effect that a recent and, in this connection, hitherto unnoticed statute (Laws of 1883, chap. 229) requires a qualification of the doctrine heretofore asserted by us. We might very well dispose of this appeal without discussing the last contention. For in answer to the proposition that the proponent utterly failed to support the codicil before the surrogate, and that wholly undisputed evidence was arrayed against it, we have found it necessary to examine the entire body of testimony. Our opinion of its efficacy and force of its probative quality, and its persuasiveness in no degree differs from that of the courts below. A restatement of the evidence is not necessary, nor a fresh recital of the circumstances which establish the proponent's case. It has been carefully analyzed by the surrogate, and his views are concurred in by the General Term. With those courts we agree. We find that the codicil expresses the mind of the testator, that he was not impelled to it by duress, fraud or deceit, and with this conclusion we should, under ordinary circumstances, leave the case, but the question as to our jurisdiction and duty to examine such a point upon conflicting evidence is of general importance. It has been fairly raised and argued upon an act of the legislature which is claimed to be expressly directed to that purpose. It will affect other cases, and its construction, therefore, should not be postponed. The provision referred to appears as an amendment to subdivision 11 of section 3347 of the act containing the Code of Civil Procedure, in chapter 22, title 2, entitled " Provisions regulating the effect and application of this act." As originally passed, that subdivision limited (with some exceptions) the effect of chapters 14 to 20, both inclusive, to an action or special proceeding commenced on or after the 1st of September, 1880, that being the day on which those chapters took effect (§ 3356). In 1881 (Chap. 681, Laws of 1881), subdivision 11 was so amended as to provide that all appeals taken from any order, sentence, decree or determination of a Surrogate's Court made or entered in such court on or after the 1st day of September, 1880, in any

matter or proceeding pending or undetermined in such court on 1st day of September, 1880, shall be taken and perfected, heard and decided in conformity to the laws and practice regulating appeals from orders, sentences and decrees of Surrogate's Court in force in this State on the 31st day of August, 1880, and all appeals from any order, sentence, decree or determination of such court brought in conformity thereto, since the 1st day of September, 1880, were declared to be "valid and effectual," with exceptions not material here.

The subdivision was again amended in 1883 (Chap. 229) by inserting a provision that "all appeals to the Court of Appeals from any order or judgment of the Supreme Court affirming, reversing or modifying any such order, sentence, decree or determination of a Surrogate's Court, shall be taken and perfected, heard and decided in conformity to the laws and practice regulating appeals from orders, sentences and decrees of Surrogates' Courts, and the *hearing and decision thereof*, in force in this State on the 30th day of April, 1877."

This is the provision relied upon by the learned counsel for the appellants in support of his contention as to the duty of this court to pass upon the facts according to the weight of evidence. We are unable to give it that effect.

The former Code (Laws of 1849, chap. 438, § 471) did not include appeals from Surrogates' Courts, and it was held that they remained subject to the Revised Statutes, and that upon appeal to this court from the judgment of the Supreme Court, in a case arising before the surrogate, the facts and the law were both to be examined, upon the ground that such appeal was upon the merits and authorized by the general language of section 11 of the Code of Procedure which gave the Court of Appeals exclusive jurisdiction to review upon appeal every actual determination made at a General Term of the Supreme Court, and was, say the court, "unrestricted by any other statute." (*Schenck* v. *Dart*, 22 N. Y. 420.) So in *Robinson* v. *Raynor* (28 N. Y. 494) a similar duty is maintained, "so far as questions are presented by the appeal." By the old Code (§§ 268, 272, 348), on an appeal from a decision by a single judge or

referee, a review of a question of fact could not be had by the Court of Appeals; it was limited to the General Term. A decision by the surrogate, as we have seen, was unaffected by that Code, and hence there resulted in regard to the same questions a diversity of practice. In 1880 (Chap. 245, § 1, subd. 4) the whole of the Code of Procedure was repealed, and by the Code of Civil Procedure taking effect on the 1st of September, 1880, proceedings in the Surrogate's Court were regulated (Chap. 18, § 2545), and the practice upon a trial by him of an issue of fact, and preparation of papers on which an appeal should be heard, assimilated to the proceedings upon and after trial by the court without a jury. Exceptions might be taken to his rulings as upon such a trial as prescribed in article third of title first of chapter tenth of that act. The provisions of that article, relating to the manner and effect of taking such an exception, and the settlement of a case containing the exceptions, apply to such a trial before a surrogate; for which purpose the decree is regarded as a judgment. And it also provided that an appeal from a decree or an order of a Surrogate's Court should bring up for review, by each court to which the appeal is carried, each decision, to which an exception is duly taken by the appellant as prescribed in that section.

It should be noticed that these provisions are applicable to every court in which the appeal may be heard, and, therefore, to the Court of Appeals as well as to the Supreme Court. Particular provision was made in regard to appeals to the Supreme Court (Art. 4, chap. 18, § 2570), as to who might appeal, within what time, and how and upon what papers, and upon questions of law, or fact, or both, and when upon the facts, it was declared that the appellate court should have the same power to decide the questions of fact which the surrogate had, and might, in its discretion, receive further testimony or documentary evidence, and appoint a referee. It was evident that these provisions applied to the Supreme Court only, and we so held. (*In re Ross, supra.*) The jurisdiction of the Court of Appeals is designated and created by law. It has no other. (*Batterman* v. *Finn*, 40 N. Y. 340; *Delaney* v. *Brett*, 51 id. 78; *Grissler*

v. *Fowler*, 55 id. 675.) It was defined (§§ 190, 191, Code of Civil Procedure) as it had been under section 11 of the Code of Procedure. By section 190, it was given, among other things, exclusive jurisdiction to review, upon appeal, every actual determination made at a General Term, by the Supreme Court, where a final judgment has been rendered in an action commenced in that court, or brought there from another court, and section 471 (*supra*) having been repealed, included of course a judgment rendered upon appeal from a Surrogate's Court. This general jurisdiction, however, was by section 191 made subject to various limitations, exceptions and conditions, and was further restricted by section 1337, which, defining what questions are brought up for review by the Court of Appeals, expressly declares that a question of fact arising upon conflicting evidence cannot be determined upon such an appeal, unless where special provision for the determination thereof is made by law. This section not only superseded the provisions of sections 268, 272 of the Code of Procedure, relating to a review, upon appeal, of questions of fact arising upon a trial before a single judge or a referee, but imposed limitations upon the Court of Appeals, applicable to the determination of the General Term upon such questions on an appeal to it from a judgment rendered in any court, including the decree rendered by the surrogate upon the trial by him of an issue of fact, for as we have seen (§ 2545), for the purposes of review, such decree is regarded as a judgment.

It is now argued by the appellants that the amendment of 1883 (*supra*) abrogates the provision of section 1337, so far as appeals from cases originating in Surrogate's Court are concerned, and restores, as by re-enactment, the laws relating thereto, which were in force on the 30th of April, 1877. At the time of its enactment, section 1337 had been construed by us in repeated instances, beginning with *Davis* v. *Clark* (*supra*) and followed by *In re Ross* and *Marx* v. *McGlynn* (*supra*), in all of which we placed our decision expressly upon the prohibition contained in section 1337. The legislature of 1883 must be deemed to have had in mind the whole law, not only as ex-

pressed by the statutes, but by the decisions of the court concerning them, and it cannot be supposed that they intended, by the later act, to interfere with the policy of the earlier one, which, dealing with the jurisdiction and powers of this court, emphatically declared that a question of fact arising upon conflicting evidence cannot be determined by it, and expressly excepts such questions from those which an appeal brings up for review. The act of 1883 (*supra*) does not enlarge the appellate power of this court, but only regulates such appeals as by existing laws were permitted, and does not purport to add to the questions to be reviewed. In the absence of a contrary intention plainly expressed, it must be presumed that the legislature did not intend to interfere with the prohibition so distinctly (§ 1337) imposed upon the court, and this view is supported by a consideration of the language of section 1338, where, anticipating that there might be a conflict in certain cases in the courts below, and consequent reversal of a judgment of the trial court upon a question of fact, the legislature, in the most formal and explicit words, have declared that, in such a case, authenticated in a prescribed manner, the Court of Appeals must review the determination of the General Term upon the questions of fact as well as those of law. It is not probable that less clear or unambiguous words would have been selected, if the purpose of the act of 1883 (*supra*) had been to extend that jurisdiction over judgments of the Surrogate's Court, relieved of the condition expressed in section 1338, or by that act as to such judgments, to frustrate and destroy the limitations imposed by section 1337 (*supra*).

We see no reason, therefore, to depart from the decisions already made concerning our jurisdiction.

The judgment should be affirmed, with costs to the respondent to be paid by the appellants.

All concur.

Judgment affirmed.