Peckham, J.
The question which first arises upon .this appeal is as to the extent of our jurisdiction, whether we can review the facts to the same extent as the general term of the common pleas, or whether we are' restricted to the review of questions of law only.
If this were the ordinary case of an appeal from the general term affirming a decision of the surrogate admitting or refusing to admit to probate the instrument propounded as a will, the case of Hewlett v. Elmer (103 N. Y., 156; 3 N. Y. State Rep., 1), would be a direct authority restricting our jurisdiction to a review of questions of law only. It is contended, however, that by the amendment made in 1886 to section 2547 of the Code, our jurisdiction is enlarged in the case provided for in that section, and that it is within our power and consequently it is our duty to review the questions of fact for the purpose of determining whether the verdict of the jury upon the trial therein provided for was against the weight of evidence, and if so, to grant a new trial upon that ground. We do not think the amendment has that effect.
It refers to cases arising in the county of New York only, and even then it affects none but those which the surrogate of that county may choose to transfer to the court of common pleas for the purpose of having a trial by jury in that court, of a special proceeding for the probate of a will pending before the surrogate.
It would require the plainest language to convince us that *524 the legislature meant to enlarge our jurisdiction in certain classes of probate cases coming to-this court upon appeal from one county alone in the state while in all the other counties it remained as already and "differently provided for by the Code of Civil Procedure. There is certainly no reason in the nature of the case why we should examine questions of fact determined by a jury of the New York common pleas in a special proceeding relating to the probate of a will, more than in any other proceeding or action.
The reasoning which led to the decision in Hewlett v. Elmer (supra), leads also to a denial of any such right on our part in the case under consideration. Full effect can be given to the language of the statute (section 2547), by holding that the right to grant a new trial because the verdict was against the evidence or against the weight of evidence is confined to the court of common pleas, and that the prohibition of section 1337 of the Code confines our right of review in the cases arising under section 2547, as in others, to questions of law only.
The provision in the last above-cited section that “the appeal shall be heard upon a case containing all the evidence.” is manifestly for the purpose of allowing the court the benefit of a full record of the evidence taken in order to be able to carry out the further provision that an error in the admission or exclusion of evidence, etc., may be disregarded, if substantial justice does not require- that there should be a new trial.
We are satisfied that we have no power to review the facts in this case, further than, as is said in Hewlett v. Elmer, to determine whether there is any evidence upon which the verdict of the jury might fairly and reasonably stand.
Guided and limited by this rule, we have carefully examined the whole of the record in this case and we are of the-, opinion that there was an abundance of evidence to sustain the verdict of the jury declaring that the deceased at the time" of the execution of the paper propounded as his last will was not of sound mind, memory and understanding and was incompetent to make a will. It would serve no useful purpose to herein enumerate, the various facts which the evidence on the part of the contestants tended to prove and which, also, legitimately tended to prove that the deceased at the time of the execution of the paper was non campus mentis.
The rule as to what constitutes a sound and disposing mind and memory is in this state quite well-settled, and each case must depend largely upon its own facts for the determination of that question.
Some exceptions to the admission of evidence and to the refusal of the learned judge to charge as requested, were taken, and they will be briefly referred to.
Mary J. Marshall was examined on commission on the *525 part of the contestants. The witness resided in the state of Illinois, of which state the deceased was a resident at the time of the execution of the proposed will and at the time of his death. The witness was examined in Illinois and many other witnesses residing in the same neighborhood were examined in the same way. In the course of her examination in chief, this question relating to the deceased wás put to her: “ During the time that you were at Mr. Pennington’s house, from the thirtieth day of November to the third day of December, 1884, what was his mental and physical condition at that time? If you know, state fully what you may know about it.”
This question was objected to on the trial as incompetent and was admitted under an exception on the part of the proponent. Before deciding upon the validity of the exception it is necessary to refer to a portion of the proceedings which had already taken place on the trial.
Upon the reading of the deposition of a witness taken on commission on the part of the proponent, a question was asked, to which the counsel for the contestants objected, and the counsel for the proponent then stated that he intended “to take no objection except those which appear noted on the return to the commissions.” Counsel for the contestants then said that with that understanding he would not make any objections to any interrogatory unless an objection appeared noted on the return, except for special reasons to be satisfactory to the court. The question that had been objected to was then allowed to be answered without objection, and evidence was subsequently given on both sides without objection, which, in the absence of such an agreement would, if objected to, in all probability have been ruled out.
Construed strictly, the statement of the counsel for the proponent of the will would have limited him to objections .which appeared noted on the return to the commission. But as the counsel for the contestants reserved a right to make objections which did not appear noted on the returns for special reasons to be satisfactory to the court, it is fair to assume that the proponent’s counsel tacitly reserved the same right to himself.
It thus appears that unless the objection were noted on the return to the commission as having been taken at the time of the examination of the witness, there must be on the trial a special reason stated for the objection, and that reason must be satisfactory to the court.
Coming now to an examination of the question and ob - jection we find that the question was not noted as objected to on the return, and that it is substantially similar to .other questions which were asked of witnesses who were not experts, and which were answered by them without *526 objection. We think that under the agreement made between counsel the objection was not specific enough, and if it were, the agreement made the decision of the trial judge final on that point; and, lastly, we think there was no injury received by the proponent which would call for a reversal of the judgment, even if the decision with reference to the agreement were technically erroneous. Most of the witnesses on both sides, who were examined on commission, and whose depositions were read upon the trial, were not experts, and yet questions of this kind were asked and answered without objection, and it would have been unfair to rule out the answer to this particular question when the others remained in, and each side had the benefit thereof.
The exception to the admission of the testimony of the witness Irons as to his opinion, is not tenable. We think it comes in substance under the agreement above alluded to, and the objection, although more specific than in the case just discussed, was still submitted under the agreement to the final decision of the trial judge. And we also think no harm resulted to the proponent from its admission.
The learned trial judge was requested to charge the jury .'“that, as the proponent has shown that the will was executed in accordance with the formalities prescribed by the statute of Illinois, the burden of proof is upon the contestants to establish that the decedent was not capable of making a will.”
It will be noticed that the request is based upon the assumption of a due execution of the will in accordance with the formalities prescribed by the statute of Illinois, and hence that the burden of proof is upon the contestants. The petition for the probate of the instrument states that it relates to both real and personal estate, but the petition is silent as to Avhere the real estate is situate. The proof shows that the property of the deceased came to him through the will of a deceased brother, and in that will the brother describes himself as a resident of Smithfield in the state of Rhode Island.
It also appears that the estate of the brother consisted largely of real estate which was undiAdded at the time of the execution of the alleged will by the deceased, and also at the time of his death. It does not appear that none of the real estate was situate in this state, and we are not to presume in the absence of evidence on that point that there was none. As the probate was sought of an instrument relating to real as well as to personal estate, and as some of the realty may have been situate in this state, the law of Illinois, whatever it may be, would have no bearing in such case. Taken in connection with the facts in the case, *527 and read in the light of the charge which had already been given, the refusal of the judge to charge as requested was proper.
The deceased at the time of the execution of the instrument was almost blind; so much so at least, that he could not read either writing or print of the ordinary size, and had to depend upon others to read for him. The judge instructed the jury that having regard to such fact, “ in addition to the • ordinary testimony with respect to the formalities of execution, it devolves upon the proponent of the will, the parties who claim the will is good, to satisfy you that it was read over to him, and that he knew its contents. A man must have capacity to make a will and also know what that document contains. ” That this is a correct statement of the law we think there is no doubt.
In Rollwagen v. Rollwagen (63 N. Y., 504), it was held, that while ordinarily the subscription and execution of a will, in the mode prescribed by law, are sufficient proof upon the question whether the instrument offered for probate as a will speaks the language and contains the will of the testator, yet where the testator can neither read, write nor speak, there must be proof, not only of the factum of the will, but that the mind of the testator accompanied the act; that he knew and understood the contents of the instrument, and that it expressed his will. W e think the rule applies to the case of a man who is wholly unable to read the instrument signed by him. The character of the proof required in such case may be less than in the case of one who in addition to his inability to read, is also unable to write or speak; but it is a difference of degree only. Where one is simply blind, there should still be more than the ordinary proof of a compliance with the general formalities accompanying the execution of the instrument, and something should be shown to enable the judicial mind to at least infer that the person signing the will was acquainted with its contents and knew its purpose.
The request in this case wholly ignored this requirement, and if charged it would have been a practical withdrawal of the charge already, and as we think, correctly given. It would have left the burden upon the proponents to prove compliance with the ordinary formalities attending the execution of such a paper in ordinary cases, and they would have been absolved from the burden of proving the further facts which, in such a case, we hold necessary to be proved, and which the judge had already instructed the jury in regard to.
The point is not therefore raised in this case as to where the general burden of proof rests in the case of the probate of a will, where the issue is one of mental incompetency, and *528 where proof tending to establish it has been given on the part of the contestants. Whether there is or is not any doubt in this state upon that point we ■ do not express an opinion, as the decision of that question is not called for herein.
The court was also requested to charge the jury, “that, the only point of time to be looked at by the jury, at which the capacity of the testator is to be tested, is that when the will was executed.” This was refused and an exception taken. The jury had already been very clearly instructed by the learned trial judge as to what it was necessary to-prove in order to overturn the paper propounded as a will. The charge was such that they necessarily knew that the material inquiry was as to the state of mind of the deceased at the time when the paper was executed, and that if of sound mind then their verdict' must be for the proponent.. .The very question submitted in writing to the jury was, whether at the time of the execution of the paper, Mr. Bull was of sound mind. The language of the request is also obscure and the jury might well have been .thereby misled into supposing that no evidence other than that which described the mental condition of the deceased at the very time of the execution of the paper was material to be-considered in arriving at a decision of the question as to what that condition was at the time named. The proponent was not entitled to the charge in the precise language of the request, and the court had already fully and clearly charged upon the same subject.
Counsel for the proponent also claimed that Kendrick, a witness for the proponent and who was present when the paper ' was executed, was a wholly disinterested witness, and that he was entirely uncontradicted as to what took place at the time in question, and his evidence showed a legal execution of a will by a person who was compos mentis, and hence the instrument must be admitted to probate. But the answer is that he was not disinterested. He acknowledged that he took, a deep interest in the case, and-that he had considerable feeling against some of the contestants. - It is - always competent to show the relations existing between the witnesss and the party against whom he is called. A jury might scrutinize the evidence of such a witness more closely than that of another who was indifferent to or friendly with the party against whom he was called. Starks v. The People, 5 Denio, 106.
He was contradicted by the witness Irons as to the mental condition of the deceased, almost at the very hour when the instrument was executed. He was contradicted'.by Dr. Enos as to what took place at Jerseyville when they were all present for the purpose of an examination of the doctor as to the mental condition of the deceased and his capacity, to make a will, and the evidence of Mr. Kendrick and Dr, *529 Enos is at variance upon a very material point. He is also contradicted upon some other matters testified to by him. And it is claimed that the whole effect of the evidence given by the contestants, if believed by the jury, was a practical and necessary contradiction of him in most material and vital parts. This claim would seem to be well founded. We do not ourselves decide which version was the true one—it is not our province. It is enough for us to say that Mr. Kendrick occupied no such position before the jury as required them to accept the evidence he gave as the correct statement of the case.
We have examined all the other questions with care, and think no error has been committed calling for a reversal.
The judgment should, therefore, be affirmed, with costs.
All concur.