### The People on relation of Baldwin Jeschly and Another
#### v. The Police Justice of Detroit.

Whether an appeal lies from a conviction in the Police Court of the city of Detroit to the Circuit Court for the County of Wayne, *quere*—the court being equally divided on the question.

*Heard October 17th. Decided December 6th.*

Case made from Wayne circuit.

Baldwin Jeschly and Mary Jeschly applied to the Circuit Court for the County of Wayne, at the April Term, 1859, for an order on the respondent to show cause why a writ of mandamus should not issue against him, as police justice of the city of Detroit, for refusing to allow to relators an appeal from the final judgment of said Police ·Court to the Circuit Court for the County of Wayne, in a case of assault and battery, in which they stood convicted in said police court.

They set forth in their petition that, on the 9th day of April, 1859, they were arrested upon a warrant issued by respondent, as police justice, on a complaint for an assault and battery: That said complaint was therein tried, on the 12th day of April, and the relators were convicted thereof and sentenced — the said Baldwin Jeschly to pay a fine of twenty - five dollars within one hour, or, in default thereof, to stand committed to the common jail of the county for the period of forty days; and the said Mary Jeschly to pay a fine of fifteen dollars within one hour, or, in default thereof, to stand committed for a period of thirty days to the common jail of the county of Wayne. That said fines were not paid, and both said relators were committed to jail. That after such committal, on the 14th day of April, 1859, said relators caused to be made and executed a recognizance on appeal to the circuit court for the county of Wayne, in accordance with the statute regulating appeals from justices courts in criminal cases, and tendered

the same to the said police justice. That said police justice admitted that the recognizance was satisfactory, and as required by the statute aforesaid, and the sureties therein sufficient, but that he refused to accept said recognizance, allow the appeal prayed for, or discharge said relators, on the ground that there was no appeal from said police court on final judgment, for a re-trial of a question of fact. The circuit court granted an order in the form prayed for, and on the 15th of April, 1859, the respondent came into court, and made answer to the application, admitting the facts of the arrest, conviction, sentence, tender of proper bond or recognizance, and the sufficiency of the same, but claiming that there was no appeal allowed by law from the final judgment of the police court of the city, to the circuit court for the county of Wayne, or to any superior tribunal, for a re-trial of a question of fact, but that said police court was, so far as its jurisdiction extended — namely, to try offenses committed within the corporate limits of the city of Detroit—a court of exclusive and final jurisdiction.

The circuit judge took this view of the law, and denied a mandamus, and the relators caused a case to be made for the review of this judgment in this court.

*H. M. & W. E. Cheever*, for relators.

[The counsel reviewed the legislation on the subject of the police court, and the jurisdiction of justices of the peace in criminal cases, and argued that a right of appeal was clearly intended. But if not, as the Constitution gives the circuit court appellate jurisdiction over all inferior tribunals, if this case is not specially provided for by statute, the court has the legal power to devise and authorize such appellate process as may be necessary to enforce the jurisdiction.— *Teas v. Robinson*, 11 *Texas* 774.]

*D. E. Harbaugh, Prosecuting Attorney of Wayne county* for respondent:

The right of appeal can not be claimed where the statute does not expressly provide for and allow it. — 3 *Ohio* 277; 11 *Mass.* 24; 14 *Mass.* 243.

MARTIN CH. J.:

Under the provisions of chapter 94 of the Revised Statutes of 1846, justices of the peace were empowered to hold courts for the trial and punishment of certain offenses committed within their respective counties, and from their judgments an appeal lay to the proper circuit court. By an act of the Legislature of 1849, — *S. L.* 1849, *p.* 342, — the right of appeal was taken away, and the remedy by certiorari was substituted. This was the condition of the law when, in 1850 ( *Sess. L. p.* 364) an act was passed by the Legislature authorizing the election of a police justice, and establishing a police court in the city of Detroit. This act transferred to such police court the jurisdiction over offenses committed within the limits of Detroit, which had theretofore been exercised by justices of the peace, and prohibited its exercise by such justices, except in case of absence or disability of the police justice — but left to them jurisdiction to try and punish offenses committed elsewhere within the county of Wayne, than in Detroit, as it existed before its passage.

By an act of the Legislature of 1855 (*S. L.* 1855, *p.* 352) section 18 of chapter 94, which had been repealed in 1849, and which authorized an appeal from the judgment of a justice of the peace, was restored; and this, it is contended by the relators, gives the right of appeal from the judgment of the police court as well. Neither the act of 1855, nor section 18 of chapter 94, in words gives such appeal, and if conferred at all it must be by implication arising from the transfer of jurisdiction from justices' courts to the police court. But, to my mind, the character of justices' courts and the Police court of Detroit, are so widely different that no implication can arise, that the Legislature of

1855 had the latter in view in the passage of the act giving an appeal from justices' judgments in criminal cases. Justices of the peace have civil jurisdiction, and none is conferred upon the police justice : they have also jurisdiction co-extensive with the limits of their county; the police justice only with the city limits. The former have also certain political powers, while the police justice has none. I regard the police court, therefore, as simply a municipal court, having a special local jurisdiction, conferred and limited by the law of 1850, and that the police justice is in no sense a justice of the peace.

It is true that the offense of which the relators were convicted, would have been within the jurisdiction of a justice of the peace of Detroit, had not the act of 1850 transferred such jurisdiction to the police court. But it by no means follows that the tribunal to which such jurisdiction was transferred became, by reason of such transfer, a court of a justice of the peace, *pro hac vice*, so as to be embraced within all subsequent legislation respecting justices' courts. In fact, quite the contrary would be the natural as well as the legal inference. When an act of the Legislature is passed, having reference to the jurisdiction of a particular court, there is no presumption that another not mentioned was intended to be embraced within its provisions.

And this is especially true in the construction of acts conferring jurisdiction. Now the act of 1855, although in terms a restoration of § 18 of chap. 94 of the Revised Statutes of 1846, must be construed to be in fact an act conferring appellate jurisdiction upon the circuit courts, over the judgments of justices of the peace in criminal cases. This act was passed after the Police Court of Detroit had been some five years in existence; and yet it did not embrace such court within its provisions. If the Legislature had intended to confer upon the circuit court appellate jurisdiction over the police court, it is hardly possible that it would have omitted to mention it in the act.

Nor can appellate jurisdiction be acquired by implication, or anything short of positive enactment; and I am aware of no instance where courts have presumed to exercise it, except upon express grant of power. If, in the present case, this jurisdiction is implied, it must be either because the police court is regarded to be in fact a court of a justice of the peace of special and limited jurisdiction, or because the jurisdiction is presumed to attach to the offense, and follow it wherever triable. The first position can not be for an instant maintained, for the reasons already given; and a consideration of the character and jurisdiction of the court will show that it ought not to be. The court is a municipal court, created for general police purposes. It embraces within its jurisdiction all local offenses against the laws of the state, affecting the peace and good order of the city. These offenses from their nature, and the character of those most usually guilty of them, require, and from the well known proceedings of police courts wherever established, receive, summary disposition. The forms of law are not observed, nor are they supposed to be, in their proceedings, in the great majority of cases, as in other tribunals. From necessity this is so, and such necessity is tacitly recognized and acquiesced in by the law. To allow appeals from all judgments of the police court would not only be contrary to the policy of the law creating these tribunals, but it would operate most disastrously upon community, by retarding, if not wholly impeding, the cause of justice, in the numberless cases which the well-being and safety of society in cities requires should be summarily dealt with.

Nor can the latter position be any more easily maintained. The appellate jurisdiction conferred by the act of 1855 does not attach to the offense, but to the court. No one, I presume, would contend that if the power to try and punish these offenses had been transferred to the Recorder's court instead of the police court, that an appeal

would lie to the circuit court from the judgment of the Recorder, by force of this act of 1855. And yet, I confess, I am not able to discover upon principle why it would not in the one case as well as in the other. If the act is to receive the interpretation contended for by the relators, viz: that the circuit court has, through it, appellate jurisdiction over every inferior tribunal upon which the power to try and punish for the offenses, conferred originally by chapter 94 upon justices of the peace, has been or may be transferred — for their position comes to this — it is because its language is to be construed, not according to its ordinary import and signification, but according to the caprice of judges, and their idea of right and justice. If it had been the intention that such jurisdiction should follow the offense, the Legislature would have so declared, and not have limited it to the judgment of a particular court or class of magistrates. The truth is that apellate jurisdiction can never be taken by implication; nor does it ever attach to crimes or offenses, but only to judgments, and to such judgments and of such tribunals as the law in express terms extends it to.

It may be true that the police court in exercising the jurisdiction conferred upon it by the act of 1850, should adopt the course of proceedings prescribed by chapter 94 to justices of the peace for the trial of offenses; but this, if so, argues nothing in favor of the assumption of jurisdiction by the circuit court; for an appeal is no part of the machinery of the trial in the police court, nor is it a proceeding in that court; and to claim the apellate jurisdiction of the circuit court from the cause of procedure in the trial below, is to make such jurisdiction dependent upon the form of trial. In my judgment such jurisdiction depends neither upon the forms of proceeding, nor upon the character of the tribunal; but upon the express words of the law conferring it.

While, therefore, there may be justice and property in

allowing an appeal from the judgment of the police court, in the particular cases of jurisdiction arising under the act of 1850, I do not feel at liberty to engraft upon the law a new provision, and extend the appellate jurisdiction of the circuit court over the judgments of a tribunal existing when the act of 1855 was passed, and to which the Legislature did not extend it.

I think, therefore, that the judgment of the circuit court denying a writ of mandamus was correct.

MANNING J.:

I agree with the Chief Justice that there is no appeal in this case. The relator has no right of appeal at common law. If he has it at all, it must be by statute. Now no appeal is given by the act organizing the police court, and section 3941 of Compiled Laws, giving an appeal from justices of the peace to the circuit court, is not applicable, unless we construe the right of appeal there given to depend on the offense of which the party is convicted, and not on the court in which the conviction is had; which is clearly contrary to its language. This section was in the Revision of 1846. It was repealed in 1849, and then restored in 1855. Between its repeal and restoration, the police court was organized, and its meaning now is what it was in 1846. If the Legislature, in restoring it, intended to give it a different meaning, or to extend it to the police court, it is, to be presumed they would have done so in terms; and what they omitted to do, it seems to me, it is not the province of the court to do.

CAMPBELL J.:

Two questions arise in this case: *First*, Is there an appeal from the police justice to the circuit court of Wayne County: *Second*, are appellants entitled to be discharged on bail.

The police court was organized under an act approved

April 2d, 1850, and by that act the police justice (except when absent or under disability) was to have "sole and exclusive jurisdiction to hear all complaints, to conduct all examinations in criminal cases, and to try all offenses which by the laws of this state are now brought and established within the jurisdiction of justices of the peace, and which may hereafter arise within the corporate limits of said city of Detroit." — (S. L. 1850, p. 365).

In case of his absence or inability, his duties were to be performed by the justices of the peace. They were also allowed to issue warrants, but required to make them returnable before him unless absent or unable to act, and where warrants were returnable before him, any further proceedings in such contingency might be had before any justice.

At the time this law was enacted, the Constitution then in force required all offenses to be presented by a grand jury, "except in cases of impeachment, *or in cases cognizable by justices of the peace*, or arising in the army or militia when in actual service in time of war or public danger." — (*Const. of* 1835, *Art.* 1, § 11). It also gave in all criminal prosecutions "the right to a speedy and impartial trial by a jury of the vicinage." — (*Art.* 1, § 10).

The criminal jurisdiction of justices of the peace to hear and determine criminal cases, was given by chapter 94 of the Revised Statutes, which was identical with chapter 118 of the Compiled Laws down to § 3951. But when the police court was organized, section 18 (granting appeals) had been repealed, and provision was made for certiorari by an act of 1849 which is incorporated in chapter 118 of the Compiled Laws, in sections 3952 to 3965 inclusive. Section 18 was restored in 1855, and the question arises whether it applies to the police court.

By the schedule to the Constitution of 1850, it was provided that the probate courts, justices' courts and police court "*shall continue to exercise the jurisdiction and powers*

*now conferred upon them respectively, until otherwise pro-
vided by law.*" — (*Sched.*, § 11).

Strictly speaking, the police justice was not an ordi-
nary justice of the peace. His powers were more limited
than those of our justices, being confined to the examin-
ation and trial of offenders, and not embracing any
civil powers. The act operated merely to transfer to him
the ordinary criminal powers of justices, over offenses
committed within the city of Detroit; leaving the other
justices full and unimpaired power wherever he was unable
to act.

The act creating this court contains no provision for
the examination or trial of offenders, or for their punish-
ment. It provides no method for summoning jurors or
witnesses, nor for keeping minutes or records (although
it recognizes their necessity by §7), and contains no pro-
vision granting any specific powers, except to require secu-
rity for costs of complainants, and to render judgment
on such security. As no provision in any other statute
recognized or provided for a police court, we must find
the powers of the court in the act creating it, or by in-
ferring them elsewhere. The common law could not sup-
ply them.

We have no difficulty in drawing the necessary infer-
ences from the nature of the powers conferred. As power
is given to hear such cases as justices may hear, we infer
that the Legislature intended they should be heard and de-
cided in the same way, and under the same conditions as if
they were actually entertained by ordinary justices of the
peace. But if we can not infer such conditions from the
identity of jurisdictional extent, then the court necessarily
failed for want of machinery, and could hear and decide no
case at all. And consequently chapter 94 must be read as
if the words " police justice " or " police court " were
coupled with, or, more correctly, embraced within the terms
applied to justices of the peace and their courts. In no
other way can the police court be vitalized.

Thus the court stood when the new Constitution was adopted. It is claimed that the schedule fixed it as it then was, and that since that time it becomes a "*municipal court*," and requires special provisions, apart from those applicable to justices' courts, in order to change its practice.

We have seen that the schedule provided that it should continue under existing laws until altered. In doing so it was coupled with probate courts and justices' courts. It received no new character, certainly, from this provision. The object of the schedule was to bridge over the interval between the two constitutions, and to declare the identity of the new and old courts. Its object was to retain and not change their character, and powers, leaving the Legislature at liberty to make any necessary modifications. After the schedule, as before, chap. 94 of the Statutes furnished the only guide for the action of the police court, as well as for justices, in trying offenses. It would seem natural and reasonable that an amendment of an act which applies to two courts, under language describing but one, should, when it uses that language, have the same double application. But there are stronger reasons.

It would be extremely unjust — to use no stronger language — to punish an offender against the general criminal code of the state for an offense committed in one town, differently from the way in which he would be punished for the same offense committed in another. Uniformity is a cardinal principle in the trial and punishment of crime in all civilized countries. And if we are authorized, from a mere grant of power to try offenses of a certain class, to infer and claim the whole machinery used by a certain court which has been in the habit of trying them, it is not easy to perceive why the same principle will not require, as well as permit, an inference, that the modifications of the model should likewise be copied, especially as by refusing to do this, a right in favor of liberty is disregarded.

But the inconsistency does not stop here. Any case

which the police justice can try, may, by the accident of his absence or sickness, come before any justice of the peace, who is authorized and compelled to proceed with it "*as though this act had not passed.*"—(§ 5 *L.* 1850, *p.* 365). There is not the shadow of foundation for any claim that an appeal would not lie from such a judgment. And if the appeal will no lie from the police court, the right of every offender to have his cause reviewed in this way, must depend upon the health and movements of the police justice. This would be a remarkable way of administering justice, and one not readily to be assumed.

The circuit court is given, by the express terms of the Constitution, appellate powers over all inferior courts. It is not necessary that this should be in the form of an appeal. It may be by certiorari or mandamus, but it is essential to justice that the same kind of remedy should apply to all identical cases.

The only objection which is suggested to the applicapability of the section restored to chapter 94, is, that it merely declares that appeals shall lie from the judgment of "*any such justice of the peace.*" This can only be understood by referring to the rest of the act to find out who is "such" justice of the peace. It applies to the persons included within the terms of the other sections, and to no one else. The police justice is not named in this section, but he is not named in any of the others. He is not referred to in the act; but unless the terms used in the other sections apply to him, he has no power whatever: if they do apply to him, there is no way to, exempt him from this section also.

I think the appeal lies from his judgments, in the same manner as from justices of the peace.

The next question is, whether the appellants are entitled to release on bail. The statute provides for a recognizance, but does not state in express terms that it shall entitle the party to a discharge as bail. In re-en-

acting the original section from the Revised Statutes, the amendment of 1848 (*L.* 1848, *p.* 5), which declared, "whereupon the said justice of the peace shall discharge said person from custody," was accidentally overlooked. But the form of the recognizance shows very clearly that it was intended as a bail bond, and the Constitution has recognized the right of accused persons to be let to bail. The appellants are entitled to be discharged from custody upon giving recognizance.

I think the decision of the circuit court, refusing a mandamus to the police justice, was erroneous, and that an order should be entered by that court granting the writ as prayed for.

CHRISTIANCY J., concurred in this opinion.

The court being thus equally divided, the judgment of the court below was affirmed.