DANIEL SULLIVAN v. EDMUND HAUG, POLICE JUSTICE
OF THE CITY OF DETROIT.

• *Police court of Detroit—Constitutional law—Right of appeal.*

1. Section 23 of Act No. 161, Laws of 1885, as amended by Act
No. 287, Laws of 1887, *limiting* the right of appeal in criminal
cases determined in the police court of the city of Detroit to
cases where the sentence of imprisonment exceeds twenty days,
or the fine imposed exceeds twenty-five dollars, is *not* uncon-
stitutional.

2. The following general propositions are summarized from the
opinion of Chief Justice CHAMPLIN:

   *a*—No person has a *constitutional* right to a second trial,
after having been duly convicted before a court of competent
jurisdiction, by an appeal to another tribunal; neither is there
an inherent right to appeal from a judgment of an inferior
court to a court of superior jurisdiction for the purpose of
securing a second trial upon the merits.

   *b*—The right to an appeal is and always has been statutory,
and the Legislature may prescribe in what cases, and under
what circumstances, and from what courts, appeals may be
taken; and unless the statute expressly or by plain implication
provides for an appeal, none can be taken.

*Mandamus.* Submitted June 12, 1890. Denied October
17, 1890.

Relator applied for *mandamus* to compel the respondent
to make return to an appeal attempted to be taken in a
case determined in the police court of Detroit. The facts
are stated in the opinion.

*James H. Pound,* for relator.

*Allan H. Frazer,* for respondent.

CHAMPLIN, C. J. The relator shows that on March
20, 1890, he was arrested on a warrant issued by the

police justice of the city of Detroit, charging him with an assault and battery upon one Thomas P. Murrin, of the same place, on March 17; that he was arraigned, pleaded not guilty, was tried, convicted, and sentenced to pay a fine of $12, and $3 costs, and in default of such payment he be imprisoned in the Detroit House of Correction for the period of 20 days.

He avers that his conviction and sentence is unjust; that he was acting in self-defense; and that on April 3, 1890, under the general laws of this State authorizing appeals from courts of justice of the peace, he executed a bond in regular form, with ample and satisfactory sureties, and so conceded by Hon. Edmund Haug, police justice, aforesaid, and presented the same to him for the purpose of appealing said suit to the recorder's court of the city of Detroit, but said Edmund Haug refused to act upon said bond, and so notified relator, and told him that he should not, for the reason that there was no section in the police court act which authorized the taking of an appeal in a case like this. Relator prays that a *mandamus* issue to the Honorable Edmund Haug, police justice, directing him to act in the matter and make return to such appeal.

The return of the police justice to the order to show cause admits the statments of the relator respecting his arrest and conviction before a jury, and also the sentence pronounced. He further returns that within 48 hours of sentence, the said fine being paid under protest, a proper recognizance with satisfactory sureties was tendered to him, which he accepted, so far as regularity and sufficiency were concerned, to appeal said cause to the proper appellate court, said recognizance being drawn to answer *either* the recorder's or the circuit court, whichever might entertain such appeal, being authorized by law so to do; but that he refused to entertain such appeal in said cause,

for the reason that the act creating the police court of the city of Detroit does not authorize appeals in such cases.

Section 23 of Act No. 161, Laws of 1885, being "An act to establish the police court of the city of Detroit," as amended by Act No, 287, Laws of 1887, reads as follows:

"In all cases determined in said police court, when the sentence of imprisonment shall exceed twenty days, or where the fine imposed shall exceed twenty-five dollars, the judge of the recorder's court of the city of Detroit, or, in case of his absence or inability to act in the premises, then either of the judges of the circuit court having jurisdiction in the city of Detroit, may allow an appeal to the recorder's court upon satisfactory affidavit presented to him within five days after the trial, showing the circumstances of the trial, and the substance of the evidence taken thereon, if, in the opinion of said recorder or judge, justice requires an appeal. On filing such affidavit, and the allowance of said appeal indorsed thereon, with the clerk of the police court, such appeal may be taken in the manner and with the effect and restrictions prescribed for appeals to the circuit court in cases of sentences by justices of the peace in criminal cases: *Provided,* That if the appeal is taken on behalf of a person imprisoned under sentence the recognizance required by law may be entered into on his behalf by the surety or sureties on appeal; and such recognizance shall have the same force and effect in all respects as though entered into personally by the person so appealing."

How. Stat. § 7109, allowing appeals from justices of the peace in criminal cases, enacts that—

"The person so charged with and convicted by any such justice of the peace of any such offense may appeal from the judgment of such justice of the peace to the circuit court: *Provided,* said person shall enter into a recognizance to the people of the State of Michigan, in a sum not less than fifty nor more than five hundred dollars, within ten days after the rendition of the judgment, with one or more sufficient sureties, conditioned to appear," etc.

The police court of Detroit was established in the first

instance by Act No. 301, Laws of 1850. This act conferred upon the police court the sole and exclusive jurisdiction to hear all complaints, to conduct all examinations in criminal cases, and to try all offenses which by the laws of this State were then brought and established within the jurisdiction of justices of the peace, which might thereafter arise within the corporate limits of the city. It authorized justices of the peace to act as police justice in case of his absence or inability. The act was brief, and did not point out the method of procedure in the trial or examination of offenders, nor did it provide for any appeal from judgments rendered by such police court. Neither did the general criminal laws of the State regulating proceedings in criminal cases before justices of the peace at that time allow an appeal. The general statute had been amended in 1849 so as to take away the right of appeal, and it was not restored until 1855.

In 1859 the case of *People v. Police Justice*, 7 Mich. 456, came before this Court for decision. One Jeschly and his wife had been convicted in the police court of assault and battery, and sentenced to pay fines, and in default to be confined in the county jail. The fines were not paid, and they were committed. They tendered a recognizance, which complied with the general laws where parties were convicted before a justice of the peace, and the justice refused to recognize an appeal on the ground that there was no appeal from police court on final judgment for a retrial of a question of fact. They applied to the circuit court for a *mandamus* to compel the justice to file the recognizance. On hearing, the circuit judge took the view that no appeal was allowed by statute, and denied the application. Upon review in this Court, the members were equally divided in opinion, Mr. Chief Justice MARTIN and Mr. Justice MANNING hold-

ing that, as the police court act did not provide for an appeal, none existed; that when the right of appeal was restored from judgments of justices of the peace in criminal cases it did not, by implication, grant the right to appeal from judgments of the police court. Mr. Justice CAMPBELL, in an opinion concurred in by Mr. Justice CHRISTIANCY, held that the police court act must be construed in connection with the general law, for it was from that law that the jurisdiction was transferred to be exercised by the police justice, and to that law the police justice was obliged to revert for his method of procedure, and consequently, when an amendment was made to the general law allowing appeals from judgments of justices, the inference was that appeals were allowed from the judgments of the police justice, who looked to the general law for his model. The Court being equally divided, the judgment of the circuit court was affirmed, as the decision of this Court.

The position of the Chief Justice and Mr. Justice MANNING was acquiesced in, or at least was not questioned, until four years later, in 1863, the Legislature provided, by amendment to the police court act, for appeals where the sentence inflicted was a fine of $25 or over, or the imprisonment was 30 days or over, if within five days the party convicted should present an affidavit to a circuit judge or recorder, and such officer should allow the appeal.[1] The law remained in this condition until 1885, when the Legislature repealed the police court act, and enacted a new law, establishing a police court in the city of Detroit. This act allowed appeals in the same time and manner as provided in the general law from justices of the peace in criminal cases. This new act was amended in 1887, and contains the provision relative to appeals quoted above.

[1] Act No. 184, Laws of 1863.

The relator asks for a *mandamus* to compel the police justice to file his bond and certify the case to the circuit or recorder's court, chiefly upon two grounds:

1. That all persons accused of violation of the criminal laws of the State are of right entitled to the same rights and remedies, regardless of locality or the court in which he is tried. In other words, the administration of the general criminal law must be the same throughout the State.

2. That the Constitution having vested the several circuit courts with appellate jurisdiction from all inferior tribunals, it is not competent for the Legislature to deprive them of such appellate jurisdiction.

What the Constitution guarantees is that the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and have the assistance of counsel for his defense; and that he shall not be deprived of life, liberty, or property without due process of law. All of these have been accorded to relator. But he complains that to allow a large portion of the citizens of this State the right of appeal to a superior tribunal, and deny, under the same circumstances and conditions, that right to the citizens of Detroit, is a plain violation of the fundamental principle of equality which underlies a republican form of government, and recognized and guaranteed by the fourteenth amendment of the Constitution of the United States. We think the position is fully met and answered in the opinion of Mr. Justice Bradley, in *Missouri v. Lewis*, 101 U. S., at page 30, where, speaking of a similar claim made in that case, he said:

"It is the right of every state to establish such courts as it sees fit, and to prescribe their several jurisdictions as to territorial extent, subject-matter, and amount, and the finality and effect of their decisions, provided it does

not encroach upon the proper jurisdiction of the United States, and does not abridge the privileges and immunities of citizens of the United States, and does not deprive any person of his rights without due process of law, nor deny to any person the equal protection of the laws, including the equal right to resort to the appropriate courts for redress. The last restriction, as to•the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right in like cases, and under like circumstances, to resort to them for redress. Each state has a right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. As respects the administration of justice, it may establish one system of courts for cities, and another for rural districts; one system for one portion of its territory, and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a state to regulate its internal affairs to deny to it this right." And see *Hayes v. Missouri*, 120 U. S. 68 (7 Sup. Ct. Rep. 350).

Acting upon its own views of expediency, the Legislature organized and established the police court of the city of Detroit, and gave it jurisdiction over certain offenses, including the one for which relator was convicted. The Legislature deemed it expedient to provide for an appeal to the recorder's court in certain cases, and not in certain others when the punishment inflicted was small. All persons residing or committing offenses in the territorial limits of the city of Detroit are subject to the same law. It operates upon all classes alike, who are within the jurisdiction of the court. Assault and battery is not a new offense, confined to the city of Detroit. The offense is the same in every portion of the State, and the limits to the punishment of fine and imprisonment the same. In this there is no discrimination in the law, either for or against the relator. No person has a constitutional right to a second trial, after having been duly convicted

before a court of competent jurisdiction, by an appeal to another tribunal; neither is there an inherent right to appeal from a judgment of an inferior to a court of superior jurisdiction for the purpose of securing a second trial upon the merits. The right to an appeal is and always has been statutory, and does not exist at common law. It is a remedy which the Legislature may in its discretion grant or take away, and it may prescribe in what cases, and under what circumstances, and from what courts, appeals may be taken; and unless the statute expressly or by plain implication provides for an appeal from a judgment of a court of inferior jurisdiction, none can be taken. See *The Constitution v. Woodworth*, 1 Scam. 511; *Ward v. People*, 13 Ill. 635; *Ex parte McCardle*, 7 Wall. 506; *Prout v. Berry*, 2 Gill, 147; *State v. Railway Co.*, 18 Md. 193; *Kundinger v. Saginaw*, 59 Mich. 355 (26 N. W. Rep. 634); *Weed v. Lyon*, Walk. Ch. 77; *Demaray v. Little*, 17 Mich. 386; *Maxfield v. Freeman*, 39 Id. 64; *Cady v. Manufacturing Co.*, 48 Id. 133 (11 N. W. Rep. 839); *Mich. Ins. Co. v. Whittemore*, 12 Id. 311; *People v. Police Justice*, 7 Id. 456; *Clark v. Raymond*, 26 Id. 415.

The decisions of this Court, with reference to appeals in chancery and other cases, are in point. The Constitution, after vesting in this Court a general superintending control over all inferior courts, with power to issue original and remedial writs, provides that "in all other cases it shall have appellate jurisdiction only." The appellate jurisdiction in "all other cases" is as plainly conferred by this section as is the appellate jurisdiction of the circuit courts in all cases over inferior tribunals. Among the other cases are those which arise in equity, and are tried upon the chancery side of the circuit courts. In these cases the jurisdiction of this Court is appellate, but it obtains no jurisdiction of this class of cases, except

by this act of the Legislature allowing appeals. In *Clark v. Raymond*, 26 Mich. 415, this Court held that no appeal lay from proceedings to enforce mechanics' liens, under chapter 215, of the Compiled Laws of 1871, because the Legislature had not provided for an appeal in such law. And this although such proceedings were by petition to the circuit court in chancery, and were to be carried on in analogy to chancery proceedings. In *Cady v. Manufacturing Co.*, 48 Mich. 137, Mr. Justice CAMPBELL, in delivering the opinion of the Court, states the law as follows: "No appeal lies in any case except where given by statute." That case was a proceeding in chancery for a voluntary dissolution of a corporation. Nothing was said in the statute authorizing such proceedings about the right of appeal, and the Court held that no appeal lies under our statute.

If the Legislature possess this power to grant or take away appeals as a remedy, they may deny it with reference to particular courts created by them, and permit it to others; they may deny appeals from the judgments of the police court, and permit it in other portions of the State. It follows that the remedy which a person may have depends very much upon the locality. The exercise of this power by the Legislature has been frequent in both civil and criminal cases. It has made it a crime to take fish from certain streams and localities, while it has been permitted in other portions of the State. It has permitted the killing of deer in certain portions of the State, while it at the same time prohibited it in others. It has constantly organized municipal courts in cities, and conferred jurisdiction over crimes and misdemeanors, and provided special procedures for such courts, which do not obtain outside of their respective jurisdictions; and, so long as they preserve to the individual the fundamentals of protection to life, liberty, and property, and proceed

by due course of law to final judgment and execution, their right to do so is unquestionable.

When Article 6, § 8, of the Constitution clothed the circuit courts with appellate jurisdiction, it used that term in its known signification. It referred to such cases as the Legislature should provide for appealing and retrial in the circuit court. As there is no writ of appeal, or process by which the circuit court can bring the cause up from the inferior court for a retrial it is evident that this provision of the Constitution contemplated legislative action in order to bring the cause within the jurisdiction of the circuit court to retry. An appeal, when perfected, generally annuls the judgment of the court below, so that the party in whose favor the judgment stood can take no action to enforce it pending the appeal. Hence the statutes authorizing an appeal require that the appellant shall give a bond or security to the opposite party to pay or perform the judgment, and other conditions are sometimes annexed for the protection of the rights of the parties. It follows that, unless the Legislature provide a statutory remedy by appeal, redress against judgments of inferior courts must be by *certiorari* or *mandamus*. The relator in this case, if he wished a review and correction of errors committed by the police court, could have resorted to the writ of *certiorari*, but this would not secure for him a retrial of the case in the circuit court upon the merits. In *People v. Mangold*, 71 Mich. 338, in speaking of criminal prosecutions, Mr. Justice CAMPBELL said:

" Under the Constitution it requires substantial equality throughout the State in methods of prosecution."

In Sullivan's case this rule was not violated; for, as was said by Mr. Chief Justice MARTIN in *People v. Police Justice,* 7 Mich. 461:

"An appeal is no part of the machinery of the trial in the police court, nor is it a proceeding in that court; and to claim the appellate jurisdicton of the circuit court from the course of procedure in the trial below is to make the jurisdiction dependent upon the form of trial."

The prosecution ended with the trial and judgment, and the method pursued was substantially the same as is practiced throughout the State.

Counsel for relator does not claim that Sullivan did not have a trial before a tribunal which secured to him the same safeguards that he would have had if he had been tried before a justice of the peace under the general law, or that the trial which he had in the police court in any manner abridged any of his rights or privileges as a citizen of the State. He has so far received the equal protection of the laws. But what he complains of is that he is deprived of the right to take an appeal to a superior tribunal, where he may have a new trial of the case upon the facts. The general law giving jurisdiction to courts of justices of the peace to try a case like his allows an appeal in case of conviction, upon complying with certain conditions, to the circuit court of the county, where a new trial may be had. But Sullivan committed a petty offense in a locality where the statute did not allow an appeal, and where justices of the peace had no jurisdiction of the offense.

Counsel for relator contends that if Sullivan had committed the assault and battery upon his agricultural brother in the township of Springwells, which is separated from the city of Detroit by a mere imaginary line, he would have been entitled to greater rights than he now has, and that he ought to have the same right of appeal as an offender who commits a simple assault and battery in Springwells. In criminal cases, an offender is subject to the jurisdiction of the court in which the offense is

committed, and must submit to the forms and mode of procedure prevailing in such court, which in municipal courts may be different from those prescribed for country districts. *Town of Summerville v. Pressley*, 11 S. E. Rep. 545.

It may not be inappropriate to consider for a moment what would be the affect of acceding to relator's contention. There is no statute.authorizing an appeal in a case like relator's. There is no way of compelling the Legislature to enact a law authorizing appeals in such cases. What remedy can we afford him? Shall the law, therefore, under which he was convicted be declared unconstitutional or ineffectual, because it does not provide for an appeal? Shall criminals within the jurisdiction of the police court of Detroit be relieved from all punishment, although duly convicted, and turned loose upon the community, because the Legislature has failed to provide for a retrial of their cases in another court? The logic of relator's contention would force us to such results.

I think the *mandamus* should be denied.

LONG and GRANT, JJ., concurred with CHAMPLIN, C. J.

MORSE, J., *(dissenting)*. It must be remembered in this case that the relator, Daniel Sullivan, was prosecuted in the police court of the city of Detroit for the violation of a State law,—for assault and battery. The State law gives a right of appeal from justice court in such cases throughout the whole State. The police court, as far as the trial of offenders against State laws is concerned, is nothing more nor less than a justice court. See opinion of Justice CAMPBELL in *People v. Police Justice*, 7 Mich. 462. It was further said by Mr. Justice CAMPBELL, in the case above cited, that—

" It would be extremely unjust—to use no stronger

language—to punish an offender against the *general* criminal code of the State for an offense committed in one town differently from the way in which he would be punished for the same offense committed in another. Uniformity is a cardinal principle in the trial and punishment of crimes in all civilized countries."

And he might also have said that the equality of the citizen before the law is the cardinal principle in a republican form of government. I think Mr. Justice CAMPBELL was right in that case, and his position the true one, although the opposite view was sustained by an equally divided Court.

The argument is used that there is no denial of this equality in this case, because it operates upon all alike who are in the city of Detroit. This is begging the question. The complaint is not that the relator has not equal rights with all other citizens who may be tried for assault and battery in the city of Detroit, but that a man arrested for the alleged crime of assault and battery, committed within the limits of the city of Detroit, has not equal rights and remedies with a citizen who is charged with the same offense in any other locality in this State. Although, under the general law of the State, and under which law he is being tried, assault and battery is the same, and the locality where it is committed has nothing to do with the offense or its punishment, yet a discrimination is made between the rights and remedies of a man, whether justly or unjustly accused, in the city of Detroit, and other parts of the State. In this complaint he is undoubtedly right, and it is against the theory and spirit of our institutions to permit it. Under this law, if a man is assaulted near the line which divides the city of Detroit from the township of Springwells, and in his defense of such assault uses more violence than is necessary or lawful, and in such struggle pushes his assailant over the line into Springwells, and there does him the

violence that renders the one first assailed yet guilty of assault and battery, he stands on an equality with other citizens of the State, and has his appeal from justice court, under the general law of the State; but if he happens to get the advantage of his assailant, on the other side of the line, within the city limits, and there pummels him unnecessarily and unlawfully, he is brought before the police court, which in such case acts as a justice court, and is summarily dealt with, and is debarred from any appeal to a higher court. This state of things was never intended under our system of government. The right of an accused person and his remedy, in case he is unjustly convicted, is one of the greatest as affecting the liberty of the citizen; and if his right or remedy in such cases is less in one locality of the State than in another, when his alleged offense is the same under the general law of the State, then he has not equality, nor is he convicted "under due process of law."

The offense with which relator was charged, for which he was tried, and of which he was convicted, was not a local offense, a violation of some local ordinance which the municipality of Detroit was authorized, under our Constitution and laws, to deal with differently than other localities, if it saw fit. It was an offense against the State, and the police court was but an agency, an officer of the State, acting under State laws, and punishing the relator, if convicted, for a State and not a local offense. Under such circumstances, he was entitled, under the general laws of the State, to their protection, and to the appeal granted in all other parts of the State by such laws in all like cases.

But it is said that the relator has no inherent or absolute right of appeal under the Constitution; that the Legislature might provide that for assault and battery there

should be no appeal from the judgment of a justice of the peace. Granted; but, nevertheless, if such an appeal is given by the Legislature, it must affect alike all localities and all classes of citizens in the State. The Legislature has as much right to say that a certain class of citizens shall have no appeal as to enact that if the crime is committed, or alleged to have been committed, in a certain locality, there shall be no appeal. If the appeal is granted to one citizen it must be granted to all; and the place where the offense is charged to have been committed, and where the accused is tried, can make no difference in his rights or remedies. This is equality before the law.

The writ ought to issue.