PEOPLE ex rel. FEENY v. BOARD OF CANVASSERS OF RICHMOND
COUNTY et al.

(Supreme Court, Appellate Division, Second Department.    December 31, 1897.)

ELECTIONS—SIMPLIFICATION OF SYSTEM.
    It is the opinion of the court that the present system of the election law
    in respect to the counting of votes should be so modified as to make it more
    simple, and so that no power be given to the local canvassers to declare
    that any ballot actually cast is void.

Action by the people, on the relation of John L. Feeny, against
the board of county canvassers of the county of Richmond, and
George Cromwell.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

John S. Davenport and William Allaire Shortt, for appellants.
Albert Reynaud, for respondent.
Charles A. Collin and John J. Kinney, for board of supervisors.

PER CURIAM. The details of our rulings on the question of the validity or invalidity of various ballots cast at the recent election in the borough of Richmond, and our reasons for such rulings, have been announced orally in open court upon the hearing of the appeal, and it is not necessary for us now to recite them. But we regard it our duty to call attention to what we deem a serious public danger, likely to arise under our present system of voting. In this way the public may be made aware of the need of reforms in the election law, by reason of difficulties of administration which would otherwise be adequately appreciated only by the courts and parties in such litigations as the present. Easily one of the most serious misfortunes that can happen to any community is a disputed title to high governmental office. We are not unmindful of the gravity of the evil of corruption in the exercise of the elective franchise; but such an evil can hardly be as great as the evil of the contentions of rival parties for the control of the government proceeding on the denial of the legal right to such control. Communities have existed with no small degree of prosperity even during a period of corruption in the exercise of the franchise by voters, and even in their legislative bodies. But no community can long maintain itself in peace and security where different factions or parties deny the title of their rivals to the control of the government, and support such denial by resistance. In 1884 the control of the general government of this country was transferred from one party to another by the result of the election in the state of New York on an average plurality of votes for electors not exceeding 2,000. Under the present system, it would seem, from the case before us, that the number of ballots rejected as void in the count of each election district at the recent election would average 5 to a district. The rulings of various boards of canvassers as to what are void ballots under the statute, and what are good, vary; and in our action in this case we have in many instances reversed the determination of the canvassers. If such a proportion of void ballots exists throughout the state at large, the total amount would far exceed 10,000, a number over five times as great as the plurality of the successful candidates for electors in the presidential election of 1884. The contests which have arisen in the single borough of Richmond occupied the special term for many days, and this branch of the court for three days; yet the validity of less than 200 votes was challenged, and by the agreement of the parties the ballots in dispute were reduced to a far less number. If an election were close, and the action of the district canvassers throughout a large territory were to be brought in review before the courts, we are entirely clear that the judicial machinery for their determination would break down by the weight and number of the issues to be decided; and it would be impossible, even on the abandonment of all other judicial labor, to decide the election questions in time for the officers to enter their offices at the commencement of

868

48 NEW YORK SUPPLEMENT (Sup. Ct.
and 82 New York State Reporter.

their official terms. In case of a close presidential election, the evil and disorder that would ensue from such a state of affairs it is difficult to estimate, and scarcely to exaggerate. The power and duty to hold some ballots good by reason of the shape of one mark, or bad on account of the shape of another, or because the marks are made in one place rather than another, involve the nicest and the most delicate exercise of discrimination and judgment, as to the proper use of which men will constantly disagree. How far a particular line must go across another line to constitute the statutory cross, and what irregularity of marking constitutes a ballot marked for identification, it is simply impossible to define by a general rule, and such questions will always be open to dispute. The great safety and security of the election system that so long prevailed in our state rested upon the rule, never relaxed, that the district canvassers must canvass every vote in the box, and that the county canvassers must simply do sums in arithmetic. Fraud may be, and in the past undoubtedly has been, perpetrated in counting the vote in the ballot box of the election district, but these acts have been of comparatively rare occurrence. But men who would hesitate at making a deliberately false count might not be restrained from deciding a marked ballot to be good or bad, as it helped or hurt the party to which they belonged, safe from the reproach of deliberate wrongdoing, and especially safe from the terrors of the prison. The evil of a corrupt exercise of the elective franchise is great, but government is a practical thing, and it is always well to see that in preventing one evil a greater evil than that sought to be guarded against has not been created. We fear that the latter, to some extent, is the effect of the present system; and we venture to suggest that the system should be so modified as to make it more simple, and so that no power be given to the local canvassers to declare that any ballot actually cast is void.

---

REISER v. NEW YORK & H. R. CO.

(Supreme Court, Appellate Division, First Department. December 31, 1897.)

INJURY TO EMPLOYE—CONTRIBUTORY NEGLIGENCE.

Appeal from trial term.