The People of the State of New York ex rel. John L. Feeny, Appellant, v. The Board of Canvassers of Richmond County and George Cromwell, Respondent.

The People of the State of New York ex rel. George Cromwell, Respondent, v. The Board of Canvassers of Richmond County and John L. Feeny, Appellant.

1. Election Law — Judicial Investigation of Ballots — Appeal. An order of the Appellate Division of the Supreme Court finally determining a proceeding by mandamus under section 114 of the Election Law (L. 1896, ch. 909) for the recount of ballots objected to as marked for identification or rejected as void, and presenting a question of law for review, is appealable as of right to the Court of Appeals as an order finally determining a special proceeding.

2. Question of Law. The question whether ballots before the court, with certain marks and appearances upon them, constituting undisputed evidence, are such as may or may not be counted under the statute, is a question of law.

3. Ballots Invalidated by Erasures. Marks apparently made by the voter in attempting to correct his own errors, as, after making the cross mark in the circle, endeavoring to erase it with a rubber or some sharp instrument, or by striking the pencil through the mark, constitute an erasure or defacement rendering the ballot invalid.

4. Cross Mark in Wrong Place. Ballots having the cross mark placed in the voting space before the words " No Nomination " are invalid and cannot be counted.

5. Written Names of Candidates. Ballots upon which are written with pencil, in the blank column, names of candidates whose names were already printed upon the ballots for the office, are invalid and cannot be counted.

6. Cross Marks before Opposing Candidates. Ballots which show cross marks before the names of opposing candidates for the same single office are not thereby wholly invalidated, but cannot be counted for the office particularly affected by the voting marks.

7. Surplusage of Cross Marks. The presence of cross marks before the name of the same candidate for the same office in two different columns is to be regarded as surplusage merely, and does not render the ballot invalid as a ballot marked for identification.

8. Cross Marks in Several Circles. Ballots containing cross marks in two or more of the voting circles at the heads of the columns, should be counted for a candidate named for the same office on all tickets so cross marked.

9. Attempted Vote for Several Candidates for Same Office. A ballot is not destroyed by the fact that the elector attempted to vote ·thereon for two or more candidates for the same office, as to which only one candidate could be voted for, but the ballot must be excluded as a vote for the·particular office affected.

10. Mark not Made by Pencil. A ballot bearing a mark made in the circle at the head of a ticket, as if by a sharp instrument, not a pencil, is thereby vitiated and cannot be counted.

11. Marks when .two Candidates are to be Elected to Same Office. When there are two candidates to be elected to the office, a ballot is not vitiated by containing voting marks opposite the names of two candidates for the office in different columns, but not on the same horizontal lines.

*People ex rel. Feeny* v. *Bd. of Canvassers,* 23 App. Div. 201, modified.

(Argued January 18, 1898; decided May 10, 1898.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 29, 1897, modifying and, as modified, affirming an order of Special Term awarding a peremptory writ of mandamus directed to the board of county canvassers of Richmond county commanding them to exclude certain ballots and to include certain other ballots, in ascertaining the votes legally cast for George Cromwell and John L. Feeny, opposing candidates for the office of president of the borough of Richmond, at the charter election in the city of New York November 2, 1897.

The facts, so far as material, are stated in the opinions.

*Albert Renaud* and. *George M. Van Hoesen* for Feeny. All erasures of writing or marks are expressly prohibited by the statute and render the ballot void. (Election Law, § 105 ; *People ex rel.* v. *Collin,* 19 App. Div. 463.) An X mark placed before " No Nomination " is not an X mark " used for the purpose of voting " and renders the ballot void. (Election Law, § 105 ; *People ex rel.* v. *Collin,* 19 App. Div. 463.) The inhibition in the statute, if any, of writing in the blank column the name of any candidate, if already printed on the ballot under a specific party designation, is unconstitutional. (Const. N. Y. art. 2, § 5.) X marks in voting spaces in dif-

ferent columns for opposite (or different) candidates for the same single office are in violation of the statute and render the ballot void. (*People ex rel.* v. *Collin*, 19 App. Div. 465.) Ballots with X marks in several circles at the head of full party tickets containing express nominations for every office (none presenting a vacant or " no nomination " space for president of the borough) are void on the ground that any real intelligent intent of the voter cannot be determined. (Election Law, § 110, subd. 2, No. 1.) The ballots with X marks for two councilmen on different tickets or columns, but on the same horizontal line, seem to be in conflict with the statute unless an X mark be made in one of the circles. (Election Law, clauses Nos. 4 and 5, subd. 2, § 110.)

*John S. Davenport* and *William Allaire Shortt* for Cromwell. " Void " ballots are those expressly made so by the statute. (Election Law, § 105; *People ex rel.* v. *Bd. Canvassers*, 129 N. Y. 395; McCrary on Elections, § 190; *Parvin* v. *Wimberg*, 130 Ind. 501; *People ex rel.* v. *Collin*, 19 App. Div. 457; 154 N. Y. 750; *McCowin's Appeal*, 165 Penn. St. 233; *Kearns* v. *Edwards*, 28 Atl. Rep. 723; *Sego* v. *Stoddard*, 136 Ind. 297; *Valerie* v. *Brakke*, 64 N. W. Rep. 180; *Parmly* v. *Healy*, 64 N. W. Rep. 176; *Whittam* v. *Zahorik*, 59 N. W. Rep. 57; *Deverill* v. *Gagnon*, 9 Queb. Rep. 20; *Hawkins* v. *Smith*, 8 Can. S. C. 676; *Matter of East Coventry*, 3 Penn. Dist. Rep. 377; *Matter of Pike Election*, 5 Penn. Dist. Rep. 519; *Grant* v. *McCallum*, 12 Can. L. J. 113; *Becte* v. *Albin*, 134 Ind. 193.) Ballots 50 and 182 " V " are within the definition of a valid voting mark and need not have been condemned. (*Hawkins* v. *Smith*, 8 Can. S. C. 676.) Ballots having a name written elsewhere than in the blank column, or the name written in the blank column of a person whose name is already printed on the ballot, are void. (*People ex rel.* v. *Bd. Canvassers*, 129 N. Y. 395, 409; *People ex rel.* v. *Shaw*, 133 N. Y. 496.) The Oats ballot is erroneously held valid. (*People* v. *Cook*, 14 Barb. 307; 8 N. Y. 67; 1 Bouv. Law Dict. 763; *People ex rel. Kenyon* v. *Sutherland*, 81 N.

Y. 1, 12 ; *Mahaney* v. *Mut. R. F. L. Assn.*, 69 Hun, 12.) An erasure of a voting mark does not void the ballot. (*Nichol's Case*, 129 N. Y. 402 ; Election Law, § 105 ; *People ex rel. Hasbrouck* v. *Canvassers*, 135 N. Y. 522.) All ballots not expressly declared by statute "void" must be counted until judicially held "marked for identification of voter." (Election Law, § 110, subds. 2 and 3 ; *People ex rel.* v. *Bd. Canvassers*, 129 N. Y. 402 ; *Whittam* v. *Zahorik*, 59 N. W. Rep. 57 ; *Northcote* v. *Palsford*, L. R. [10 C. P.] 476.)

GRAY, J.   I have reached the conclusion that we cannot escape the onerous task of examining the ballots, which are in dispute in this proceeding. It might well have been spared to this court by express enactment in the Election Law ; but without such we would not be warranted in refusing to assume jurisdiction. I am unable to say that questions of law are not presented by this appeal. Entertaining that view, I have addressed myself to the examination of the ballots in dispute and, classifying them, as nearly as may be, according to the objections made to them, I shall, specifically and briefly, state my conclusions as to their validity or invalidity, as votes for the respective candidates for the office of president of the borough of Richmond.

*First.* As to the ballots upon which the Special Term and the Appellate Division have agreed, with respect to their allowance or rejection, I am satisfied with their conclusions. There are 101 of these ballots, as nearly as can be made out from the record.

*Second.* The following ballots, numbered 5, 52, 74, 80, 81, 88, 98, 128, 136, 143, 144, 147, 160, 161 and 173, being fifteen in all, were objected to because of erasures, cancellations, or for being defaced. I think, under section 105 of the Election Law (Laws of 1896, ch. 909), that these ballots were invalidated and could not be counted. Twelve of these ballots affect Cromwell and three of them affect Feeny.

*Third.* The following ballots, numbered 64, 93, 165 and 178, being four in all, were objected to as having been marked

for identification, from the fact that the cross mark was placed in the voting spaces before the words on the ticket "No Nomination." I think that, under section 105 of the Election Law, these ballots could not lawfully be allowed; inasmuch as they bore upon them a mark other than the cross mark to be used by the elector in voting, in the circles, or in the voting spaces to the left of the names of the candidates. All of these ballots affect Cromwell.

*Fourth.* The following ballots, numbered 3, 33 and 45, being three in all, contained the names of candidates written with pencil in the blank column, whose names were already printed upon the ballots for the office. Under the provisions of section 105, these ballots were clearly vitiated. All of these ballots affect Feeny.

*Fifth.* The following ballots, numbered 58, 60, 84, 87, 95, 97, 99, 101, 112, 167, 174, 176 and 185, being thirteen in all, show cross marks before the names of opposing candidates for the same office; [not the office in question in these proceedings]. I do not think that the effect of the elector's action was to destroy the whole ballot; but that, under paragraph one, subdivision two, of section 110 of the Election Law, the vote for the office particularly affected by these voting marks for opposing candidates could not be counted. I think, therefore, that Cromwell should be allowed eight and Feeny five of these ballots.

*Sixth.* The following ballots, numbered 27, 34, 59, 65, 66, 72, 100, 102, 105, 113, 134, 157, 158, 159, 179, 183 and 184, being seventeen in all, showed cross marks before the name of the same candidate for the same office in two different columns upon the ballot. I think that we should regard the effect of so voting to be that of surplusage, merely. No just reason exists for regarding such as marked ballots; when, under paragraph one, of subdivision two, of section 110, we find, where cross marks are found before the names of opposing candidates for the same office, that the effect prescribed is to invalidate, not the whole ballot, but only the vote for the office particularly affected by the voting marks. Although the

statute does not refer to just such a case, the principle is the same and I am disposed to think that it is open for us to hold that, if in the one case, mentioned in paragraph one of subdivision two, the ballot is not to be regarded as marked for identification, it should not so be regarded in the other. The justice to the elector, which should characterize the interpretation of the statute, seems to demand that we should so hold. I think, therefore, that Cromwell should have counted for him fourteen of these ballots and Feeny three.

*Seventh.* The following ballots, numbered 14, 24, 77, 85, 103, 133, and 139, being seven in all, contain cross marks in two, or more, of the voting circles at the heads of the columns. I think that they should all be counted, under paragraph six, of subdivision two, of section 110 ; which provides that where the cross mark is in more than one circle, and if on either of the tickets there shall be a candidate for an office, for which *no other* candidate is named on the other ticket, the elector's vote shall be counted for such candidate. The effect would be to give to Cromwell the votes on these seven ballots ; inasmuch as his name was on the different tickets that had been marked in the circles.

*Eighth.* The following ballots, numbered 35, 94, 109 and 170, being four in all, were objected to because the elector had attempted to vote for two or three candidates for the same office. Under paragraph one of subdivision two of section 110, I think that the effect was, not to destroy the ballot, but to require the inspectors to throw it out as a vote for the particular office affected ; it being impossible to determine the elector's choice for the office. In that view, Cromwell would receive three and Feeny one of these votes. Ballot 131 contained a mark made in the circle at the head of the ticket, as if by a sharp instrument, not a pencil, and was thus vitiated. I think that it should not be counted for Feeny.

*Ninth.* The following ballots, numbered 28, 31, 32, 57, 70, 106, 107, 110, 111, 117, 118, 127 and 137, being thirteen in all, contain voting marks opposite the names of two candidates for the same office in different columns, but not on

6

42    People ex rel. Feeny *v*. Bd. of Canvassers. [May,

Concurring opinion, per Haight, J.          [Vol. 156.

the same horizontal lines. I do not think that the ballots were vitiated thereby; inasmuch as, in every case, there were two candidates to be elected to the office; and the elector should be regarded as having exercised his right to select which one of the two candidates, on the different tickets, he would cast his vote for. Some of these ballots were also objected to because of defects, which, I think, are too trivial to affect them and which need not be more particularly referred to. Of these ballots, nine were for Cromwell and four were for Feeny.

*Tenth.* The following ballots, numbered 18, 75, 78, 104 and 148, being five in all, I think were rendered invalid because of marks found upon them, either against the words " No Nomination," or elsewhere upon the ballots. Of these, four affect Feeny and one affects Cromwell.

As to ballots numbers 3, 33, 45, 106, 107 and 128, considered above, the Appellate Division affirmed the determination of the Special Term. They should, therefore, be transferred to the first class, whilst numbers 126 and 129, included in the first class, were reversed and should be transferred to the ninth class and held valid.

I think that the judgment of the Appellate Division should be modified, so as to provide for a recount in accordance with the views herein expressed; and, as so modified, affirmed, without costs to either party.

Haight, J. (concurring). It may be that a review by this court of alleged defective ballots cast in a closely contested election may consume so much time as to seriously cripple the court and in a measure prevent it from transacting its regular business. But the remedy is with the legislature and not with us. The situation affords us no excuse for overruling what I consider to be many well-considered cases, and now holding that we have no jurisdiction to hear such cases.

I cannot concur in the opinion of Judge Martin. I do not understand that the remedy given by the statute, of a review of the ballots by mandamus, is exclusive, for the reason that

the right of action by quo warranto still survives.   But if it should be held that the remedy is exclusive, it by no means follows that the determination of the lower court may not be reviewed by appeal.   The Constitution not only gives this court the power to review the determination of the Appellate Division, but in certain specified cases makes it the duty of the court to review.   It provides that "appeals may be taken *as of right* to said court from judgments or orders finally determining actions or special proceedings."   And to the same effect are the provisions of the Code.   If an appeal may be taken to the court *as of right*, how can the court justify itself in refusing to hear it?   The order sought to be reviewed is beyond question a final order in a special proceeding in which the appeal may be taken *as of right*, and I believe it to be the duty of the court to entertain it and determine the questions involved.   The Constitution further provides that "the legis- lature may further restrict the jurisdiction of the Court of Appeals and the right of appeal thereto, but the right to appeal shall not depend upon the amount involved." (Art. VI, § 9.)   Is there any restriction of the right of appeal in this statute?   I have looked for it in vain.   There are statutes giving an exclusive remedy where appeals have been restricted, but in such statutes there are provisions indicating the legis- lative intent to restrict a review by providing that the deter- mination of the General Term or Appellate Division shall be final.

Questions of fact may arise as to whether a ballot is marked for identification, or is torn by a voter or the inspectors of the election, or is marked otherwise than with a pencil containing black lead, which may depend upon the testimony of wit- nesses.   In such cases a unanimous affirmance by the Appel- late Division could not be reviewed by this court.   Our power is limited to the review of the law; and we cannot review a reversal upon the facts.   (Const. art. VI, § 9.)   But there has been no reversal upon the facts in this case.   The order of the Appellate Division is silent as to the grounds upon which it modified the order of the Special Term, and we must, there-

fore, assume that it was upon the law.  (Code, §§ 1338, 2082, 2087.)  The reversal being upon the law, we must review all questions of validity arising upon the ballots and not depending upon extrinsic evidence.  Such questions are purely conclusions of law based upon the ballots, the undisputed evidence in the case.

There may be some doubt as to the conclusion reached by Judge GRAY with reference to three or four ballots.  They are so near the border line that minds may well differ as to their validity.  As to all of the other ballots, my views are in accord with those expressed by him in his opinion.  Under the circumstances, I am inclined to yield to his views with reference to the ballots in doubt, and concur with his conclusions as to all of the ballots under review.

O'BRIEN, J.  This is an appeal from an order of the Appellate Division modifying and, in effect, reversing an order of the Special Term, which awarded a peremptory mandamus directed to the board of county canvassers of Richmond county commanding them to exclude certain ballots, and to include certain other ballots in ascertaining the votes legally cast at the recent election for George Cromwell and John L. Feeny, opposing candidates for the office of president of the borough of Richmond, at the recent charter election in the city of New York.

The Appellate Division in modifying the order of the Special Term gave directions to the canvassers with respect to the votes to be rejected entirely, and those which should be counted for each candidate.  The questions all arise under the law governing elections and the canvassing and counting of the votes under chapter 909 of the Laws of 1896.

The controversy discloses the complicated character of that statute and the obscure and cumbersome nature of many of its provisions.  It is quite within the bounds of moderation to say that the citizen cannot now vote in such a way as to have his vote counted, especially if he desires to vote for candidates other than those upon the tickets of the two principal parties,

without becoming familiar with a system of statute law containing one hundred and sixty-seven sections, some of which we have found quite difficult ourselves to understand. The public records show that at every election in this state many thousands of votes cast by the electors are rejected for some defect in the ballots used, and which are condemned or supposed to be condemned by the statute as void. The process of voting to many uneducated persons and to some who are educated, is so difficult that votes enough are thrown out by the canvassers in some cases to determine the result of the election. Whether it is wise to so frame laws that govern the casting and counting of votes at an election in such a way as to render it very difficult, if not impossible, for many of the electors to deposit a valid ballot in the ballot box, is a question for the legislature. It is quite apparent that under the present system the result of elections is not to be always determined by the will of the majority, since, unless they comply with all the provisions of the statute, their votes cannot be counted.

The learned court below has very properly pointed out the dangers to free government that exist in the system of voting at elections which is so complicated that many of the electors are unable to comply with it, and we do not propose to further enlarge upon that subject, which would seem to demand the attention of the legislature where, of course, it properly belongs. (23 App. Div. 201.)

It is true that many of the mistakes in casting votes and many of the defects in ballots appearing in this case, which under the statute renders the will of the citizen wholly ineffectual, are due to carelessness or ignorance, but a statute regulating voting at elections and prescribing the manner in which the vote is to be counted cannot be said to meet the wants of the public if it omits to take into consideration the fact that the vast body of men constituting the electorate of this state is composed of persons in all conditions in life and of every grade of intelligence. Some are laboring under the physical and mental decay of old age. Others are unable to read, and still others are unable in the multitude of names printed on

the ballot to pick out and properly mark the candidates for whom they intend to vote in such a way as make their intention effective.

The ballots furnished at this election contained eight columns or regular party tickets with as many voting spaces to the left, besides an independent ticket and a blank column or ticket, making ten tickets in all. In many cases the names of the same candidates appeared on two or more tickets. The result was that about three hundred and fifty of the ballots were originally in dispute. The parties themselves seem to have settled the dispute by conceding certain ballots to be invalid, and withdrawing them from the litigation. About one hundred and eighty-five were presented to and passed upon by the courts, and the Appellate Division allowed some ballots that the Special Term pronounced defective and rejected some that it had held to be valid.

In that condition the case comes here, and the first question suggested is, whether such a controversy can properly come before this court. It would seem, at first thought, that after all the efforts made in recent years in the Constitution and by statute to confine the jurisdiction of this court to questions of law properly arising or involved in the general development of the law, that the court could not be converted into a board of canvassers to examine about two hundred ballots and determine how many of them should be counted for this candidate and how many for that candidate; whether a cross within the circle was a good cross and made with the right kind of a pencil; whether a voting mark opposite the name of some candidate was outside or inside the voting space; whether there were any marks or improper erasures on the tickets, and numerous other questions which the law seems to regard as important.

If, however, the order appealed from is a final order in a special proceeding, I am unable to give any good reason why the parties are not entitled to have the question reviewed here.

That it is a final order in a special proceeding no one can

doubt, and, under the Constitution and the statute, any aggrieved party has the right to have such an order reviewed in this court. Moreover, orders in such proceedings and arising under this very statute, have always been reviewed here, and, in view of the many recent decisions in appeals from such orders, it is too late to discuss the question as to the right of appeal, if there ever was any doubt about it. (*In re Emmet*, 150 N. Y. 538; *In re Madden*, 148 N. Y. 136; *In re Fairchild*, 151 N. Y. 359; *People ex rel. Nichols* v. *Board of Canvassers*, 129 N. Y. 395; *People ex rel. Wells* v. *Collin*, 19 App. Div. 457; affirmed, 154 N. Y. 750.)

It is useless to attempt to find any distinction between these cases and the one at bar. There is no distinction. The cases cited all arose under this very statute as it existed at the time, and no change has since been made with respect to the right of appeal to this court, or which in any respect changes the character of the order. They are all cases in which the question was whether certain votes found in the ballot box should have been counted or rejected, and that is the question here, and the only question.

The case presents no question of fact whatever. There was no question of fact presented to the courts below, and there is none now before this court as to whether the disputed ballots were or were not marked for identification. The question that we have to deal with is whether the ballots which have been sent here with the record are such as may be counted within the terms of the statute on that subject. That statute declares that when a ballot discloses certain marks or physical appearance it shall not be counted, and we have the ballots before us with certain marks and appearances upon them, and whether they come within the condemnation of the statute is a pure question of law. Whether the condition of the ballot was due to the voluntary or involuntary act of the voter is a matter of no consequence. Our duty is simply to apply a statute to conceded facts.

It has been suggested that since the Election Law does not in terms authorize an appeal to this court, that none will lie.

But the Election Law is in precisely the same condition, so far as the right to appeal to this court is concerned, as it was when each of the above cited cases were here; and to change the law to meet the varying exigencies of each particular case, is an unmitigated evil which every stable system seeks to avoid. It is no doubt true that cases of this character occupy much time and attention on the part of the court in disposing of them. But that was always so, and it was just as strong an argument many years ago as it is now. Moreover, such a controversy involves important rights in the administration of municipal government, and sometimes may involve in a broader field the existence of the government itself. And it would be difficult, under such circumstances, to point out a function of this court more important than the settlement of such controversies.

But the very point suggested against the right of appeal to this court has frequently arisen before and been decided. The rule is that, where any statute authorizes a special proceeding like this, which terminates in an order, without in terms giving the right of appeal to this court, an appeal will, nevertheless, lie in all such cases under the general provisions of the Code, unless there are words found in the statute expressly restricting such right of appeal. (*In re Ryers*, 72 N. Y. 1, 4; *In re Brady*, 69 N. Y. 215, 219, 220; *In re P. P. & C. I. R. R. Co.*, 85 N. Y. 497; *In re Swan*, 97 N. Y. 492, 493; *In re De Camp*, 77 Hun, 480.) It was not suggested by counsel on either side that the order before us was not appealable here, and what I have said on that subject does not proceed from any doubt that I entertain as to its appealability, but simply because some of my brethren think that it is not. So we find ourselves in precisely the same position as the learned judge at the Special Term, with all the disputed ballots before us, and acting practically as a court of original jurisdiction, although theoretically as a court to review questions of law. In the courts below, every ballot is designated by a number, and the decision upon each may be regarded as a finding of fact or law; and the question is, whether, upon inspection, it

appears to be in such form that it may lawfully be counted within the prohibitive language of the statute. It should here be observed that when the statute declares that ballots cast by the electors and found in the ballot box in certain form and in certain condition, bearing on their faces certain physical appearances, shall not be counted, there is nothing to do but obey the law, even though the intention of the voter be manifest.

The first step, therefore, in the inquiry is to ascertain what the statute is and what it means, always bearing in mind that one of the main purposes of its enactment was to prevent corruption and bribery at the election, and to render impossible the identification of the ballot by any device whatever after being deposited in the ballot box.

The disposition to be made of the disputed ballots in this case depends upon the construction of sections one hundred and five and one hundred and ten of the Election Law, which read as follows:

" § 105. * * * It shall not be lawful to make any mark upon the official ballot other than the cross X mark used for the purpose of voting, with a pencil having black lead, and that only in the circles or in the voting spaces to the left of the names of candidates, or to write anything thereon other than the name or names of persons not printed upon the ballot for whom the elector desires to vote in the blank column under the proper title of the office.

" Nor shall it be lawful to deface or tear a ballot in any manner, nor to erase any printed device, figure, letter or word therefrom, nor to erase any name or mark written thereon by such elector.

"Any ballot upon which there shall be found any mark other than the cross X mark used for the purpose of voting, or a name or names written otherwise than as heretofore provided, and any ballot which shall be found to be defaced or torn, or from which there shall have been erased any device, figure, letter or word, or which shall have been marked or

7

written upon other than by a pencil having black lead, shall be wholly void, and no vote thereon shall be counted * * * .

" The elector shall observe the following rules in marking his ballots :

" 1. If the elector desires to vote a straight ticket, that is, for each and every candidate of one party for whatever office nominated, he shall make a cross X mark in the circle above the name of the party at the head of the ticket.

" 2. If the elector desires to vote a split ticket, that is, for candidates of different parties, he must not make a cross X mark in the circle above the name of any party, but shall make a cross X mark in the voting space before the name of each candidate for whom he desires to vote on whatever ticket he may be.

" If the ticket marked in the circle for a straight ticket, does not contain the names of candidates for all offices for which the elector may vote, he may vote for candidates for such offices so omitted by making a cross X mark before the names of candidates for such offices on other tickets, or by writing the names, if they are not printed upon the ballot, in the blank column under the title of the office.

" If the elector desires to vote for any person whose name does not appear upon the ballot, he can so vote by writing the name with a pencil having black lead in the proper place in the blank column. The elector can vote blank for any office by omitting to make a cross X mark in any circle, and by making a cross X mark in the voting space before the name of every candidate he desires to vote for, except for the office for which he desires to cast a blank vote. * * *

" One straight line crossing another straight line at any angle within a circle, or within the voting spaces, shall be deemed a valid voting mark."

It will be more convenient to divide the ballots in this case which are in dispute into classes with reference to the alleged defects which was the cause for their rejection, and to apply to each class the particular provision of the statute which affects it.

1. There are one hundred and eight ballots as to which the Special Term and the Appellate Division are agreed in the disposition to be made of them. Most of them were held bad, although a few were allowed, and, after carefully examining them all, we think that the conclusion of the courts below with respect to these ballots is correct.

We have examined the remaining ballots and think that the questions arising upon them should be disposed of in the following manner:

2. There are fifteen of these ballots which show erasures, cancellations and obliterations. These marks were apparently made by the voter in attempting to correct his own errors. After making the X mark in the circle or in the voting space, he would endeavor to erase it with a rubber or some sharp instrument or in some cases by striking the pencil through the mark so as to erase it. The ballots in this class are numbers 5, 52, 74, 80, 81, 88, 98, 128, 136, 143, 144, 147, 160, 161 and 173.

Referring to the statute above quoted we find the language to be that, " It shall not be lawful to make any mark upon the official ballot other than the cross X mark used for the purpose of voting   *   *   *   nor to erase any printed device, figure, letter or word therefrom, nor to erase any name or mark written thereon by such elector. Any ballot upon which there shall be found any mark other than the cross X mark used for the purpose of voting, or a name or names written otherwise than as heretofore provided,   *   *   *   shall be wholly void and no vote thereon shall be counted." The language quoted condemns the ballots of this class, and they cannot lawfully be counted. There is nothing in the section which gives to the inspectors a discretion, or permits them to construe the ballots according to the intent of the elector in this respect. The language is mandatory, and in this there is no hardship. If the elector makes an error in marking his ballot he may return it and procure another. If he again makes an error he may return it and procure a third, but he cannot correct the error by erasing or defacing the marks and thus con-

fusing and distinguishing his ballot. (*Peo. ex rel. Wells* v. *Collin*, 19 App. Div. 457; affd., 154 N. Y. 750.)

3. There are a few ballots that are affected by the fact that the voting mark was placed in the voting space before the words on the ticket, " No nomination." Several of the tickets upon the ballot did not contain a full list of candidates to be voted for at this election, and in the spaces intended for candidates so omitted was printed the words, " No nomination." Four of the ballots in question contained X marks in the voting space before these words. They are numbers 64, 93, 165 and 178. The following language of section 105 precludes the counting of these ballots, viz. : " It shall not be lawful to make any mark upon the official ballot other than the cross X mark used for voting, with a pencil having black lead, and that only in the circles, or in the voting spaces to the left of the names of the candidates." It is manifest that marks made in this way before blanks under the words, " No nomination," could not have been made in any legal sense for the purpose of voting, and that they were not made in the voting spaces to the left of the names of the candidates. It might be a convenient way of facilitating identification of the ballots after being deposited in the box, but plainly it is not permitted by the statute.

4. There are three ballots, viz. : Numbers 3, 33 and 45, which contain the names of candidates written with pencil in the blank column, whose names were already printed upon the ballots, and for the same office. These ballots must be excluded under the language of the section, which states that " It shall not be lawful to make any mark upon the official ballot other than the cross X mark, * * * or to write anything thereon other than the name or names of persons not printed upon the ballot for whom the elector desires to vote in the blank column under the proper title of the office." If the name of the candidate for whom the elector desires to vote is printed upon the ballot under the title of the office for which he is a candidate, the voter shall then exercise his choice by making the X mark before the printed name, and not by

writing it in the blank column.   Hence, writing the same name in the blank vitiates the ballot under the plain language of the statute.

5. There are thirteen ballots which show X marks before the names of opposing candidates for the same office.   In some cases the elector attempted to vote for both Tracy and Low for mayor, and in others for Jones and Mullick for sheriff.   This class of ballots consists of numbers 58, 60, 84, 87, 95, 97, 99, 101, 112, 167, 174, 176 and 185.   When the elector had made a cross X mark before the name of one candidate for mayor he had exercised his entire right with respect to that office, and a second cross X mark before the name of another candidate for that office was an illegal marking of the ballot.   A ballot is either good or bad as a whole.   If it is mutilated and rendered invalid as to certain candidates appearing upon the ballot, it is void as to all.   By placing a voting mark opposite the name of two candidates for the same office, when the elector could lawfully vote but for one, he placed an illegal mark upon the ballot which would easily facilitate its identification after being deposited in the box, and hence these ballots must be excluded.

6. Seventeen ballots show X marks before the name of the same candidate for the same office in two different columns upon the ballots.   These ballots are numbers 27, 34, 59, 65, 66, 72, 100, 102, 105, 113, 134, 157, 158, 159, 179, 183 and 184.   The same objections stated above to the ballots in class five apply to these.   It was an attempt to vote twice for the same candidate, and whatever may have been the intention of the voter, the second voting mark is prohibited by the statute, since it would be a convenient means of identification, and hence these ballots cannot be counted.

7. Seven ballots are found which contain cross X marks in two or more of the voting circles at the head of the columns. They are numbers 14, 24, 77, 85, 103, 133 and 139.   A cross X mark in the circle at the head of the ticket is for the purpose of voting a straight ticket.   As the elector can only vote one straight ticket, it is manifest that the placing of cross X

marks in two of the circles upon the ballot renders it invalid, unless it is a case coming within the exceptions contained in section one hundred and ten. The provisions of section one hundred and five upon this point are as follows : " If the elector desires to vote a straight ticket, that is, for each and every candidate of one party for whatever office nominated, he shall make a cross X mark in the circle above the name of the party at the head of the ticket. If the elector desires to vote a split ticket, that is, for candidates of different parties, he must not make a cross X mark in the circle above the name of any party, but shall make a cross X mark in the voting space before the name of each candidate for whom he desires to vote on whatever ticket he may be." The only exception or qualification to this provision is contained in No. 6 of subdivision 2, section 110, and is as follows, viz. : " If the elector shall have marked a cross X mark in more than one circle at the head of the party tickets and if on either of such tickets there shall be one or more candidates for office for which no other candidate or candidates is or are named on such other ticket or tickets so marked in the circle his vote shall be counted for such candidate or candidates."

None of the ballots in this class come within this last provision. Each of the columns above which cross X marks have been made contained the name of a candidate for the office of president of the borough of Richmond. It may be that if, for example, one of the columns had contained the name of a candidate for the office of mayor and the other marked column had contained the name of no candidate for that office, the ballot could have been counted for the candidate named. That seems to have been the intent of the provision, but it goes no further than that, and to allow the ballots to be counted for a candidate for the office of president of the borough of Richmond would be to permit the elector to vote, either twice for one candidate for that office, or for two candidates for the same office. This, certainly, the statute does not authorize or permit, and the statute should not be construed so as to permit anything of that kind, since it would mani-

festly be a convenient device for the subsequent identification of the ballot.

8. There are twenty-three other ballots that cannot be brought into any general class heretofore mentioned, and I shall not attempt a description of each of these ballots or of the alleged defects.

Five of them are, I think, invalid since the elector attempted to vote for three candidates by placing voting marks opposite their names, when but two were to be elected. One of them has a wide, ragged stub attached to the ballot. Another has a cross in one of the circles above a party ticket manifestly not made with a pencil, but with some sharp instrument. The votes thus affected are numbers 35, 94, 109, 131 and 170, and they are in such condition that I think they cannot lawfully be counted under the statute.

The remainder of the twenty-three are contested principally upon the ground that the elector placed voting marks opposite the names of two candidates for the same office in different columns, but not on the same horizontal lines. In every case, however, there were two candidates for the same office thus voted for, and I think the elector had the right to select which of the two in different columns or on different tickets, should receive his vote, without in any way invalidating his ballot.

There are perhaps some slight defects in a few other ballots which do not seem to be of sufficient importance to invalidate them under the statute. Therefore, the following ballots included in this criticism, viz., numbers 18, 28, 31, 32, 57, 70, 75, 78, 104, 106, 107, 110, 111, 117, 118, 127, 137 and 148 are valid and should be included in the count.

This disposes of all the ballots which were really in dispute either before the Special Term or the Appellate Division, and in some respects the result above indicated differs from both of the courts below.

It will be seen that the principal question here is with respect to the construction of the statute which directs the canvassers to exclude certain votes from the count. We

have referred in the preceding discussion to that statute as applicable to the several classes of votes indicated. It is only necessary to add that the legislature itself has given it a construction in section 81 in the instructions to be printed upon the face of the ballots. These instructions are as follows:

" Upon the face of each stub shall be printed in type known as brevier capitals the following: ' This ballot should be marked in one of two ways with a pencil having black lead. To vote a straight ticket, make a cross X mark within the circle above one of the party columns. To vote a split ticket, that is, for candidates of different parties, the voter should make a cross X mark before the name of each candidate for whom he votes. If the ticket marked in the circle for a straight ticket does not contain the names of candidates for all offices for which the elector may vote, he may vote for candidates for such offices so omitted, by making a cross X mark before the names of candidates for such offices on another ticket, or, by writing the names, if they are not printed upon the ballot, in the blank column under the title of the office. To vote for a person not on the ballot, write the name of such person under the title of the office in the blank column. Any other mark than the cross X mark used for the purpose of voting or any erasure made on this ballot, *makes it void, and no vote can be counted hereon.* If you tear, or deface, *or wrongly mark this ballot,* return it and obtain another.' "

The orders of the Appellate Division and of the Special Term should, therefore, be modified in the particulars hereinbefore mentioned, and as thus modified affirmed, without costs to either party.

Martin, J. (dissenting). Section 114 of the Election Law (Ch. 909, Laws 1896), as it now stands, provides: " If any certified original statement of the result of the canvass in an election district shall show that any of the ballots counted at an election therein were objected to as marked for identification, a writ of mandamus may, upon the application of any candidate voted for at such election in such district, within

twenty days thereafter, issue out of the Supreme Court to the board or body of canvassers, if any, of the return of the inspectors of such election district, and otherwise to the inspectors of election making, such statement requiring a recount of the votes on such ballots.   If the court shall, in the proceedings upon such writ, determine that any such ballot was marked for the purpose of identification, the court shall order such ballot and the votes thereon to be excluded upon a recount of such votes.   A like writ may in the same manner be issued to determine whether any ballot and the votes thereon which has been rejected by the inspectors as void, shall be counted.   If in the proceedings upon such writ the court shall determine that the votes upon any such ballot rejected as void shall be counted, the court shall order such ballot and the votes thereon to be counted upon a recount of such votes.   Boards of inspectors of election districts, and boards of canvassers, shall continue in office for the purpose of such proceedings."

It is to be observed that this statute provides for the action of the Supreme Court by mandamus in two cases, and two cases only : (1) Where ballots have been counted which were objected to as being marked for identification, and (2) where votes which should have been counted have been rejected by the inspectors as void.   Therefore, unless a ballot which is claimed to have been marked for identification was counted, no question is presented that can be determined in such a proceeding.   On the other hand, unless a vote has been rejected by the inspectors as void, its validity cannot be inquired into.   The right conferred and the proceeding authorized by this provision of the statute are new.   They had no existence whatever at common law, or under the provisions of any statute of this state, until 1891, when a similar provision was adopted authorizing the Supreme Court to investigate and determine only the question whether certain protested ballots had been marked for identification.   That provision was re-enacted in 1892 and made a part of the General Election Law, being section 118 of chapter 680, Laws 1892.   But that law, like the one. preceding it, related only to ballots marked for identification.   The issues

to be determined in a proceeding under either of those statutes were issues of fact, involving the question whether the ballot or ballots marked were marked for the purpose of identification. (*People ex rel. Hasbrouck* v. *Supervisors*, 135 N. Y. 522.) By the present Election Law, the power to investigate and determine whether ballots protested as marked for identification were, in fact, marked for that purpose, is conferred upon the Supreme Court, and also the power to determine whether any ballot, which has been rejected as void, should be counted.

At the threshold of the examination of this case, an important question arises as to the jurisdiction of this court, which is, whether the determination of the Supreme Court in such a proceeding is reviewable here. The only authority upon which this proceeding is based, and the only right to the relief sought, are conferred upon a candidate by section 114 of the Election Law. Anterior to the statutes, to which we have referred, a candidate had no right to thus test the title to an office, or to thus secure a recount of the votes under the direction of the Supreme Court. He might, in a proper case, assert and secure his title by an action in the nature of a quo warranto, but he possessed no right either under the statute or at common law to institute a special proceeding for that purpose. Nor until then could he procure such a recount. These statutes have conferred upon candidates a special right for which a special remedy is given, to be enforced by a special proceeding. The present statute, like the preceding one, vests in the Supreme Court alone the power to issue a writ for the determination of the matters referred to in it, and especially provides that they are to be determined by that court. No provision whatever is found in the statute authorizing any appeal to the Court of Appeals. So that the inquiry arises whether the remedy given by it is an exclusive one to be controlled by its provisions, or whether a writ issued under that statute and the proceedings upon its return fall within and are controlled by the general statutes of the state.

It is a principle which is well established by the authorities

in England, in this state and in other commonwealths, that
where a new right is given by a statute a special remedy is
provided, and the forum where it may be enforced is desig-
nated, or when a new power is conferred and the means of
executing it are therein granted, the right and power can be
vindicated and executed in no other way than that prescribed
by the statute, and a party is restricted to the remedy and
forum provided. (Sutherland on Statutory Construction,
§ 399; *Dudley* v. *Mayhew*, 3 N. Y. 9, 15; *Hollister* v. *Hol-
lister Bank*, 2 Keyes, 245, 248; *Rex* v. *Robinson*, 2 Burr.
799; *Plankroad Co.* v. *Morley*, 23 N. Y. 554; *Darlington*
v. *Mayor*, etc., 31 N. Y. 164, 179; *Cook* v. *Whipple*, 55 N. Y.
163; *People ex rel.* v. *Hall*, 80 N. Y. 125; *Continental Store
Service Co.* v. *Clark*, 100 N. Y. 365, 369; *Heiser* v. *Mayor*,
etc., 104 N. Y. 68; *Matter of N. Y., L. E. & W. R. R. Co.*,
110 N. Y. 374, 379.) In the *Dudley* case this court said:
"It is very clear that when a party is confined to a statutory
remedy, he must take it as it is conferred; and that where the
enforcing tribunal is specified, the designation forms a part of
the remedy, and all others are excluded." Again, in the *Hol-
lister* case it is declared: "Where a statute confers a right, and
also, in the same statute, prescribes an adequate means of pro-
tecting or enforcing it, the right is confined to the statutory
remedy." In *Rex* v. *Robinson*, Lord Mansfield said:
"Where a statute creates a new offense by prohibiting or mak-
ing unlawful anything which was lawful before, and appoints
a specific remedy against such new offense by a particular
sanction and particular method of proceeding, that particular
method of proceeding must be pursued and no others." In
the *Plankroad Co.* case this rule was quoted, and it was there
held that the same rule was applicable to legal liabilities of a
civil nature created by statute, for the recovery of which a
special remedy is given. In the *Darlington* case, which arose
under the statute known as the Riot Act, it was said that
the act gave a remedy which did not exist before, prescribed
the mode of enforcing it, and the method of obtaining pay-
ment, and that the parties were confined to the statutory

remedy, as that was the manifest intention of the legislature. The rule that where a statute confers a right and prescribes an adequate means of protecting or enforcing it, the right is confined to the statutory remedy, is also clearly recognized in the *Cook* and *Continental Store Service Co.* cases. The decision in the latter case was to the effect that when a right is conferred by law, a remedy is provided, and the forum where they may be enforced designated, a party is restricted to the remedy and forum provided. *Heiser* v. *Mayor* was a case where a statute conferred upon the owners of real estate the right to recover for injuries occasioned by the change of grade in the streets adjoining their property, and it was held that they were entitled to recover only in the manner provided by the statute, and that no right of action existed in their favor, except that specially directed therein. In *Matter of N. Y., L. E. & W. R. R. Co.*, which was a railroad crossing case, it was again held that it is a settled rule of construction that when rights are conferred by statute, and specific remedies provided therein for their protection, such remedies are exclusive and must be pursued.

The statute, as it now stands, confers upon a candidate for office a new right, which exists only by virtue of it. It provides a new remedy for the vindication of that right, and expressly designates a particular tribunal by which it may be enforced. The right secured to a candidate is to have a recount of the ballots under the circumstances mentioned in the statute, and the authority to direct such recount is conferred upon the Supreme Court alone. Here, then, a new remedy is given, a new power is conferred upon the Supreme Court, and the manner of enforcing and executing them is plainly specified in the act. It was the manifest intent of the legislature to confine the parties to such a proceeding exclusively to the remedy and forum provided. It could not have been its intent to convert the Court of Appeals into a canvassing board in every instance where ballots were objected to as marked for identification, or rejected upon the ground that they were void, and thus require it to examine all such ballots

offered or cast at all the general, district, county, town or
municipal elections held in the state.   To hold that such was
the intent or effect of the statute would frustrate its clear
purpose, as such an appeal would postpone the ultimate deter-
mination of the rights of the parties until the term of office
practically expired.   It would also cast upon this court a
flood of litigation which would substantially bar the determi-
nation of other cases where important interests are involved,
and thus result in a substantial denial of justice to other liti-
gants.   The obvious purpose of the legislature was to provide
a special, summary and speedy method of determining the
questions referred to in that section, and to secure a prompt
determination of the rights of the opposing candidates.   In the
language of Judge EARL, it provided " a speedy and summary
proceeding " for their determination.   If its intent was to
confer upon parties the right of appeal through all the courts
of the state, including the court of last resort, it was formed
with full knowledge of the fact that it was improbable that
such cases would reach a final determination until the term of
the office involved had expired.   The existence of such a
right would result in embarrassing and, to an extent, in destroy-
ing the efficiency of the judiciary, and would render this court
impotent to perform its usual and necessary functions, with
no corresponding benefit.   No such intention should be
attributed to the legislature.   It may be that the language
employed in section one hundred and fourteen would justify
an appeal to the Appellate Division, which is a branch of the
Supreme Court.   But that the Legislature intended to confer
a right to appeal to this court we do not believe.   No such
intent is expressed, and it cannot be fairly implied from the
language employed.   Consequently, so far as the intention of
the legislature is concerned, we are of the opinion that it did
not intend by that statute to confer any right upon the parties
in such a proceeding to appeal to this court.   If it had intended
to confer that right, it would have so declared in plain and
unmistakable terms.

The right of appeal is not a natural or inherent one.   That

**62**    People ex rel. Feeny *v.* Bd. of Canvassers. [May,

Dissenting opinion, per Martin, J.    [Vol. 156.

right, so far as it has hitherto existed in the jurisprudence of this state, is a statutory one and does not exist at common law. It is a remedy which the legislature may in its discretion grant or take away, and it may prescribe in what cases, under what circumstances and from and to what courts appeals may be taken, except as prohibited by the organic law, and it is for the appellate tribunal to determine the nature and extent of its jurisdiction and whether the right of appeal exists. (Elliott's Appellate Procedure, § 354, note 1, and § 23; *People ex rel. Grissler* v. *Fowler*, 55 N. Y. 675; *Butterfield* v. *Rudde*, 58 N. Y. 489; *Ryan* v. *Waule*, 63 N. Y. 57; *Hewlett* v. *Elmer*, 103 N. Y. 156, 158; *People* v. *Trezza*, 128 N. Y. 529; *Szuchy* v. *Hillside Coal & Iron Co.*, 150 N. Y. 219, 224; *People ex rel.* v. *Cullen*, 151 N. Y. 54; *People* v. *Mayhew*, 151 N. Y. 610; *Sullivan* v. *Haug* [82 Mich. 548], 10 L. R. A. 263.)

But it is said that section one hundred and ninety of the Code of Civil Procedure confers jurisdiction upon the Court of Appeals in actions and proceedings to review the actual determination of the Appellate Division of the Supreme Court in the cases therein mentioned, and that under subdivision one of that section appeals may be taken to this court as of right from judgments or orders finally determining actions or special proceedings. It must be admitted that if the general provisions of the Code are applicable to a proceeding of this character, they are sufficiently broad to include the appeal in this case. But as only questions of law could then be reviewed, at most but a few of the questions involved in such a proceeding could be actually determined upon such an appeal.

It is also urged that as there were no words in the statute restricting the right of appeal to this court the right exists, and the cases of *Matter of Ryers* (72 N. Y. 1, 4), *Matter of Brady* (69 N. Y. 215, 219, 220), *Matter of P. P. & C. I. R. R. Co.* (85 N. Y. 497, 498), *Matter of Swan* (97 N. Y. 492, 493) and *Matter of De Camp* (77 Hun, 480) are relied upon as sustaining that proposition. It is to be observed that most of those cases arose under statutes which it was claimed

made the determination of the courts below final and conclusive, and the question involved was whether, in view of the language employed, an appeal to this court was forbidden. It is true that in some of the cases general language is employed which is sufficiently broad to cover the case at bar. But it is manifest that in the cases cited the principle, that where a new right or power is conferred and the means of executing it are granted by a statute, the parties are restricted to the remedy and forum provided, was not discussed or considered. It is said that if this principle had been applied to those cases the result would have been different. That may be true. But if the question was not considered, those decisions are not to be regarded as binding authorities upon the question under consideration. There are other cases where this court has considered questions which, under this principle, it had no jurisdiction to determine, still, as in none of them has this question been presented or discussed, they cannot be regarded as authorities bearing upon it.

The real and controlling consideration upon this branch of the case is whether the remedy given by section one hundred and fourteen of the Election Law is exclusive. If it is, it follows that, as it gives no right of appeal to this court, none exists. As the right to institute a proceeding to control the action of election officers in the cases mentioned is given by a special statute, and did not previously exist at common law or otherwise, the statute must be strictly construed and the parties held to have the remedy expressly given by the language employed, or necessarily implied from it, and none other. (Brown on Jurisdiction, § 14.) When this statute is thus construed, it becomes evident that no right to appeal to this court exists, and that the procedure provided for by that act for the enforcement of the rights conferred by it should control and be had before the forum mentioned therein, exclusively of any other.

We are of the opinion that, for the reasons already given, the court has no jurisdiction to review the questions presented upon this appeal, and that the appeal should be dismissed, with costs.

BARTLETT and VANN, JJ., were in favor of dismissing the appeal upon the ground stated by MARTIN, J., in his opinion. As, however, the court decided that the order in question was appealable, and their votes were essential to a decision upon the merits, they deemed it their duty to take part in the final vote, and, after examining all the ballots, they concurred in the opinion of GRAY, J., except as to the question of appealability.

Order modified so as to provide for a recount in accordance with the views set forth in the opinion of GRAY, J., and, as modified, affirmed, without costs to either party.

Concur, BARTLETT and VANN, JJ., who file memorandum, and HAIGHT, J., who files opinion; PARKER, Ch. J., concurs with O'BRIEN, J., who reads opinion for modification; MARTIN, J., reads opinion dissenting as to appealability of order, and does not vote on the merits of the case.